No. 444

First Circuit

———

.McILHENNY v. ROXANA PETROLEUM CORPORATION

———

(May 7, 1929. Opinion and Decree.)

———

Dymond and Levy, of New Orleans, attorneys for plaintiff, appellee.

Burke and Smith, of New Iberia, and Alex F. Smith, of Shreveport, and Koerner, Fahey and Young, of St. Louis, Mo., attorneys for defendant, appellant.

LECHE, J. The present suit was brought to recover compensation for damages to plaintiff's residence, alleged to have resulted from an explosion of dynamite at the hands of defendant's agents and employees while making seismograph observations in the neighborhood of his home.

Plaintiff's residence is situated on Avery Island in the Parish of Iberia, is practically new, having been built a little over one year previous to the time of the explosion. It is substantially constructed, covers a space of 113 feet long by 68 feet in width, and cost nearly ninety thousand dollars. Plaintiff says that the explosion which caused the damage took place on December 18, 1926, at 10:55 a. m., and he details the damages in substance as consisting of cracks in concrete walls and floors and also in the roof, partial destruction of a chimney on the west side and cracks in the cement walks and driveways three-quarters of an inch in width. He says that he obtained estimates of the cost of repairing these damages and that it will take twelve hundred and fifty dollars to pay for the same. The truth and accuracy of this statement is not challenged except as to the cause of the asserted damage. Mrs. McIlhenny who was in the house at the time, says that the whole house shook and rocked so that she thought it was going to crumble, and she says that the noise was tremendous. Plaintiff was then in his office, in a building about 200 feet east of the residence, and he says that there was a tremendous detonation and a rocking of the building, that windows were broken, and that the explosion and rattling of the building was practically simultaneous.

It appears that Avery Island is a salt dome about 3,000 acres in area, that mining operations for salt are conducted about one mile from the house, and that in the course of these operations explosives are used, but plaintiff says that the charges are very small, and that he had never felt any vibrations as a result of these blastings.

Defendant showed by the testimony of its employees that on December 18, 1926, at 11:05 a. m., it exploded a charge of 500 pounds of dynamite buried to a depth of six feet on the property of D'Albor, nine and one-half miles from plaintiff's residence, and that on the same day at 2:35 p. m., another charge of 500 pounds of dynamite was exploded in the same locality; that on the day previous, December 17th, at 4:35 p. m., a charge of 500 pounds

was exploded in the same locality; and that on December 20th three charges were exploded also in the same locality, one of 500 and two of 600 pounds. It is strange that, if the explosion of 10:55 or 11:15 a. m. of the 18th of December, started by the employees of defendant, did the damage complained about by plaintiff, the other explosion of the 17th and the three of the 20th of December are not reported to have done any damage, although taking place in the same locality; that is, nine and one-half miles from the residence of plaintiff.

It also appears from the testimony of other witnesses who do not seem to be interested in the result of this case, that other houses, one of which was a two-story house constructed of brick, situated within the radius of a mile from these explosions were not affected thereby. Another apparently disinterested witness who resides a quarter of a mile from the place where the explosions took place, says that his house was not damaged and that the only damage he had ever heard of, was a broken pane of glass in his brother's home, also situated a quarter of a mile from the seat of the explosion.

Dr. H. A. Wilson, director of physics of Rice University, Houston, Texas, an expert of great reputation, says that earth vibrations caused by the explosion of 500 pounds of dynamite, such as was used by defendant, at a depth of six or eight feet could barely be detected on a seismograph situated nine or ten miles from the place of the explosion.

John N. Riley, sales agent for the Atlas Powder Company, practically experienced with the use of dynamite, believed that a charge of 500 pounds of dynamtie could be safely exploded at a distance of 800 feet from a building.

Jacob Barab of the Hercules Powder Company who had engaged in experiments and investigation in regard to explosives, said that 500 pounds of dynamite was an unusually small charge and believed that it would not damage buildings even at one mile. He further states that according to the "American Table of Distances," adopted by the Interstate Commerce Commission in directing the handling of explosives, it would be safe to store 500 pounds of dynamite within 800 feet of a building. He is of the opinion that it would have been impossible for an explosion of 500 pounds of dynamite to cause damage to plaintiff's buildings situated nine and one-half miles away.

R. H. Sumner, another expert, connected with the Dupont Powder Company, who has made a study of explosives, says that his company uses the American Table of Distances, which gives 800 feet as a safe distance to store 500 pounds of dynamite.

An expert in the use of the seismograph testified as to the sensitiveness of that instrument and says that a man walking within a distance of ten feet will cause such disturbance of the indicator as to render the record useless, that a truck passing a hundred feet away will cause a greater vibration than an explosion of 500 pounds of dynamite at a distance of nine miles. It seems that the seismograph amplifies the vibrations of the earth from two thousand to five thousand times and that the movement of the earth from an explosion of 500 pounds of dynamite at a distance of three and one-half miles, would be shown to be from the two-thousandth to five-thousandth part of a quarter of an inch, an almost negligible amount of motion.

From all this evidence it appears to us as unreasonable to conclude that the al-

leged cause of the damage to plaintiff's home has been proved with any degree of certainty. The only circumstance that lends color to the correctness of the theory that the damage was caused by the explosions started by defendant's employees and agents, is the almost simultaneous vibrations in point of time of the house and the explosion on the 18th of December, and yet no damage was done to other houses much closer to the seat of the explosion. Even plaintiff's house is not charged to have been injured by other explosions, with the same and with larger quantities of dynamite from the same locality the day before or two days after the 18th of December.

The only statute which in our opinion, sanctions the cause of action in this case, is Article 2315 of the Civil Code. The other article of our Code, No. 667, founded on the well-recognized maxim "Sic utere tuo ut alienum non laedas," does not seem to us to be apposite, for that article appears in that part of the Code treating of servitudes and regulating the use of real property as between neighbors. It reads as follows: "Although a proprietor may do with his estate whatever he pleases, still he cannot make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him."

On the other hand article 2315, found under the title of the Code "Of offenses and quasi offenses," is couched in the following language: "Every act whatever of man that causes damage to another, obliges him by whose fault it happened to repair it. * * *" (See Act 159, page 270 of 1918, amending.) Here we find in clear and unambiguous language the creation of a cause of action in favor of one who has suffered damage against the person by whose fault it happened. Notice the language of the statute, which says, "by whose fault it happened." The jurisprudence in this state, so far as we know, is uniformly to the effect that there must be fault, or negligence or a delict of some kind, or failure to perform some duty, and that such must be alleged and proved; that negligence is a conclusion to be drawn from the facts alleged; and that, while the specific word "negligence" need not be used, the facts alleged must be such as to necessarily imply negligence. See Neely vs. Orleans Metal Bed Co., 123 La. 1041, 49 So. 700; Jones vs. Texas & P. Ry. Co., 125 La. 542, 51 So. 582, 136 Am. St. Rep. 339; Brown vs. Orleans Gravel & Sand Co., 134 La. 1046, 64 So. 903; Hills ys. City of New Orleans et al., 139 La. 537, 71 So. 797; Boutte vs. New Orleans Terminal Co., 139 La. 945, 72 So. 513.

If, then, we assume that the damage to plaintiff's home was caused by the explosion set by defendant, a fact which we do not believe to have been proved with any degree of certainty, and even if we further assume that the facts alleged by plaintiff might imply fault or negligence on the part of defendant, we are furthermore of the opinion that the proof in the record does not sustain any implied fault or negligence by the defendant. Guided by its own experience in the use of dynamite for blasting, and relying on the experience of other experts, some of whom testified in this case, there is no ground to believe that defendants were guilty of an act which might produce the results alleged by plaintiff, or that it was guilty of failing to use due care in its blasting operations.

We believe that plaintiff has failed to make out a case against defendant, that the judgment appealed from should be set aside and avoided, and that his demand should be rejected at his costs, and it is therefore so ordered.