LAND, Justice.
 

 Albertus D. Dodd, petitioner, is the owner of the SE *4 of NW of Section 13, Township 23 North, Range 16 West in the Rodessa Oil Field of Caddo Parish. He has resided for many years on this tract, which is situated one mile and three-quarters Northeast of'Rodessa, and is in the middle of the Rodessa Oil Field. •
 

 In December, 1935, petitioner erected a new home, which is located in the Southwest corner of his 40 acre tract, ana about 190 feet from the old. home, which was sold, by him and removed, in order that an .oil well might be drilled. -
 

 ■ Paul Schaefer, superintendant of defend- ■ ant, Glen ' Rose. Gasoline ' Company, Inc., testified that the Company erected- a $250,-000 gasoline plant on-52 acres--of land,-described as the NW ^.of.-SW %. and West 12 acres of the NE of SW % of Section 13; Township- 23 North,- Range -16 West, arid-known-as 'the Hunter Lease, and which •was acquired by the Company.
 

 This witness states that active construction of the .plant commenced May 1, 1936; that the six-point flare, consisting of six columns through which the waste gases ignited were passed, was constructed July 1, 1936; that operation started August 1, 1936; and that gas passed through the flare on August 1, 1936, which was the first gas that ever passed through the Glen Rose Plant. Tr. 214, 215.
 

 The six-point flare was discontinued the last of November, 1937. Tr. 216.
 

 After that date, the gas was disposed of through a stack or vent line, 150 feet high, by being dissipated into the air, without burning, and at a cost of $2,800 to defendant.
 

 The stack or vent line was installed by defendant to accommodate the 'plaintiff, Mr. Dodd, who objected to the heat from the flare. Tr. 216, 217.
 

 The six-point flare was located about 600 feet from the new home of petitioner, Albertus D. Dodd, in the Southwest corner . of the 40 acre tract owned by him.
 

 The 12 acres forming a- part of the 52 acre tract upon which the plant is erected adjoin on the South the-property line of - petitioner, and the' Northeast corner of the remaining 40 acre tract touches the- Southwest corner of .the 40 acres owned by petitioner.
 

 Petitioner, his wife, Mrs. Gussie Tyson Dodd, and one child, have' resided in the . house since it .was built in December, 1935.
 

 In a pétition, filed Octobe'r 11; 1937, petitioners, Mr. Dodd ánd wife, complain that defendant operated its plant until the
 
 *6
 
 month of November, 1937, in a tortious and negligent manner, in that defendant
 
 employed a flare
 
 to dissipate the unused gas accumulating through its plant,
 
 the flare
 
 being used to burn the gas from.the wells on the 52 acre tract on which its gasoline plant is located and, in addition, being used to burn the gas from a great number of other wells not located on its 52 acre tract.
 

 That
 
 this flare
 
 was of tremendous size, having flames exceeding 80 feet in height, and that it threw off unbearable heat and smoke and caused great vibration and noise, sucking and drawing up sand, dirt and other impurities which were deposited in the home and on the furniture and fixtures of petitioners.
 

 That, because of
 
 the operation of the flare,
 
 petitioners and their family were unable to sleep at night or to live under ordinary conditions; and that their home has become practically worthless, and the health of petitioner, Mrs. Gussie Tyson Dodd, has been seriously impaired.
 

 In their original petition,
 
 dated October 11, 1937,
 
 petitioners allege
 
 “that said flare constitutes a public and private nuisance,"
 
 and pray that a permanent injunction issue, upon the trial of the case,
 
 which began on May 12, 1938. At thát time, the flare had been discontinued since the last of November, 1937,
 
 and the stack, or vent line, had been substituted in its place to carry off the gas, without burning, to be dissipated in the air.
 
 The flare
 
 had ceased to exist and, if a nuisance at all, the nuisance had been abated, and no ground for the issuance of the permanent injunction, insofar as
 
 the flare was concerned,
 
 remained in the case.
 
 On February 14, 1938,
 
 petitioners filed an amended and supplemental petition, in which
 
 they attack the stack also as a nuisance,
 
 and pray for judgment declaring itst operation to be a nuisance, and that defendant be permanently enjoined and prohibited from further continuation of its use.
 

 After alleging that the stack, or vent line, had been erected at approximately the same location as the flare, petitioners aver that
 
 the stack
 
 is used for the purpose of dissipating into the air the gas, oil or distillate which accumulates in the operation of the gas plant located on the premises of defendant; and that the operation of
 
 the stack
 
 by defendant is unreasonable, negligent, tortious and unlawful and in complete disregard of petitioners’ rights as adjoining land owners in the following particulars :
 

 “A. That oil, gas, gasoline and/or distillate escapes through said
 
 stack
 
 in great quantities, resulting in the creation of a misty or vaporous condition throughout the surrounding atmosphere.
 

 “B. That the oil, gas, distillate and other gaseous substance which accumulate at the top of said
 
 stack
 
 precipitates to the ground and accumulates on and in the house of your petitioners.
 

 “C. That as a result of such conditions, a great hazard is created because of the constant danger of fire or explosion and petitioners suffer the same damages from such conditions as are detailed in the original petition herein.
 

 
 *8
 
 “D. That because of such hazard, the discomfort caused by said conditions, the noise, accumulations of dirt and grime, it is impossible to keep petitioners’ premises in a livable condition, and said trespasses upon petitioners’ premises and rights
 
 constitute nuisances which should be abated.
 

 “Other than as amended herein, all of the allegations of the original petition are herein reiterated.” (Italics ours.) Tr. pp. 18, 19.
 

 In answer to petitioners’ original and amended petitions, defendant avers that its plant represents an investment of physical properties in excess of $250,000, and that same is operated in at least as efficient mode or manner as any similar plant in the Rodessa Field in Caddo Parish, and that none of the various plants in this field is operated any more efficiently or with more regard to the rights of others than defendant’s plant.
 

 Defendant avers that
 
 the stack
 
 in question is used for the purpose of dissipating into the air the waste accumulating as residue from the operation of its gasoline plant, and that
 
 such waste gas, and not oil or distillate,
 
 is disposed of through the
 
 stack.
 
 Defendant avers that the gases so disposed of have a specific gravity of less than 65 per cent of the weight of air, and that such gas, necessarily and in accordance with the law of gravity, rapidly rises and does not settle to the earth.
 

 Defendant further avers that, in the event and only in the event that this Court should hold that defendant has in any manner injured petitioners, such action does not constitute the maintenance of a nuisance, and defendant should not be enjoined from the operation of its gasoline plant; and that, in such event, petitioners have a plain and adequate remedy by law in a suit for damages and are not entitled to the equitable writ of injunction.
 

 In its answer, defendant also avers that petitioners live in an oil and gas field and that, under the so-called “balance of convenience rule,” are not entitled to enjoin the operation and maintenance of a costly gasoline plant which gives employment to various people and which utilizes the natural resources of this State and which inures to the benefit of the people of the State of Louisiana generally.
 

 Besides these special defenses, defendant has denied the allegations of petitioners contained in their original and amended petitions, except defendant admits that it treats at its gasoline plant gas which is produced from various wells in the Rodessa Oil Field in Caddo Parish.
 

 (1) Petitioner, Mrs. Gussie Tyson Dodd, sues for the following damages:
 

 For pain and suffering.......................$ 5,000.00
 

 For worry, discomfort and inconvenience.. 5,000.00
 

 Damage to thyroid glands and nervous system and permanent injuries suffered therefrom ................................... 5,000.00
 

 Total ......................................$15,000.00
 

 Petitioner, Albertus D. Dodd, sues for the following damages:
 

 Doctors* hills incurred and to he incurred for treatment of wife (estimated).........$ 250.00
 

 Pain and suffering............................ 2,500.00
 

 Value of home................................ 7,000.00
 

 Worry, discomfort and inconvenience...... 2,500.00
 

 Total ......................................$12,250.00
 

 
 *10
 
 For reasons orally assigned, judgment was rendered as follows: In favor of Albertus Dodd in the sum of $650; in favor of Mrs. Dodd in the sum of $2,000; and refusing issuance of injunction.
 

 Petitioners, contending that they are aggrieved by the failure of the trial judge to decree a permanent injunction prayed for and that the damages awarded were inadequate, have taken a devolutive appeal.
 

 Likewise, defendant, Glen Rose Gasoline Company, Inc., ma.iitaining that petitioners are not entitled to any damages, or, in any event, that only nominal damages should be allowed, have appealed suspensively to this Court, insofar as the damages awarded are concerned.
 

 (2) The trial judge who saw and heard the witnesses testify in the case Was clearly of the opinion that the damages claimed
 
 by-petitioners
 
 were excessive.
 

 To illustrate, petitioner, Mrs. Gussie Tyson Dodd, claims $15,000 for pain and suffering, and for damage to thyroid glands; and petitioner, Albertus D. Dodd, claims $5,000 damages for pain and suffering, and $7,000 for value of home, or a total of $12,000 in damages. The estimate placed on the home is more than twice its value, as shown by the evidence.
 

 In their original petition, it is alleged 'that,
 
 because of the operation of the flare,
 
 petitioners and their family were unable to sleep at night or to live under ordinary conditions;
 
 and that their home has become practically worthless.
 
 Yet petitioner, Mr. Dodd, testified in the case that he and his wife and child had continuously resided in the house from the date of its construction in December, 1935, down to the present time, notwithstanding all of the inconvenience and discomfort alleged to have been caused by the flare, or which petitioners allege resulted from the substitution of the stack in its place.
 

 There is no evidence in the record to show that petitioners have abandoned their home as worthless, or that they intend to do so in the future. Nor is there any evi- . dence to show that petitioners have at any time offered to sell their home at a sacrifice and move to a new home. Besides, the flare was removed the last of November, 1937, and the stack was substituted in its place.
 

 There has been no physical damage done to the house in which petitioner and his family reside through the operation by defendant company. of its gasolirie plant, the actual and real cause of action which petitioners have against defendant company being the inconvenience and discomfort and pain and suffering alleged to have resulted to petitioners by the defendant company, through the tortious operation of its gasoline plant, as alleged by petitioners.
 

 However, the damages claimed by petitioners are excessive and, in our opinion, they did not suffer to the extent indicated by their testimony.
 

 (3) Mr. Dodd, in testifying as to the effect of
 
 the flare
 
 upon them, stated that “it was so hot you couldn’t stay in the-house; that dirt and other substances permeated the home; that we could not
 
 *12
 
 even leave the doors open or raise the windows; that our bed would be just a sheet of sand and grit and the furniture was just the same way; that the ground around the flare showed the effects of the heat about two hundred feet; that the trees are burned half way through and are dead on one side; that the fire was so hot that it drew them over; that the noise of the flare was greater than a freight train roaring constantly.” See Testimony of Mr. Dodd, Tr. pp. 66-101.
 

 Mrs. Dodd, in testifying as to the effect of
 
 the flare,
 
 stated that prior to the erection of the gasoline plant and flare, she was in perfect health; that, from the very beginning, she could not sleep at all, and that, until she was just worn out, she never did; that she just had short naps because of the terrible heat from the torch; that, the first thing, she started having colds, something that she had never been subject to before; that she was nervous and could not rest; that the dust was so bad until it smothered you, and there was the constant blowing into the house; that she could clean her house, and then, in a few minutes, the house would be covered by dust again; that, of course, she inhaled the dust all the time; that then there was the noise; the whole house would just tremble, and you could hear the French doors rattling at night, and that her head would feel like it would burst; that none of them could sleep, her baby, her husband or herself either,
 
 hut that it did not seem to affect them as it did her.
 

 The witness further testified that she had started going to the doctor just from nervousness; that then she had never noticed her neck; that she began having trouble with it — these glands; that when it first began, it seemed like just a small-place and then it- got so bad until it got where there was a knot in her neck and it stayed in constantly; that her neck still hurts; that she coughs; ■ and started coughing right after they put that
 
 flare
 
 in; that when she would leave home, she would feel better when she would get away from that
 
 torch
 
 (flare) ; that it was making such a noise in her ears; that, all the time, there was just a ringing and buzzing in her head from listening to that noise; that thyroid glands were her trouble, nervousness; that her average weight up until that
 
 flare
 
 was erected was 122 pounds, and that her weight is now 109% pounds. See Testimony of Mrs. Dodd, Tr. pp. 102-124.
 

 These witnesses are, to some extent, corroborated by other witnesses for petitioners.
 

 (4) It is stated in the brief of petitioners that: “A review of Mrs. Dodd’s testimony will show that the first effects upon her in April was that she began having colds. At later visits, she complained of nervousness and pain in her neck. It was some time after her first visits to the doctor that the thyroid difficulty became really acute.
 

 “ ‘ * * * I had to start going to the doctor just from nervousness. Then I had never noticed my neck before. I began having trouble with it, you, know, these glands (pointing). When it first began it seemed like it was just a small place and then it got so bad until it got to where it
 
 *14
 
 was a knot in my neck and it stayed in there constantly.’ (Tr. 106.)
 

 “This testimony, taken in connection with her statement that it was
 
 the six-point flare that ruined her health,
 
 shows very clearly that the full force of the injury to her thyroid gland did not accrue until
 
 after the six-point flare was installed. Moreover, the testimony is that since the stack* was substituted for the flare, Mrs. Dodd has shown a marked improvement.
 

 “‘A. I could not say whether it was in November, I could not say that exactly, but I ca'n say she has been definitely better in the last six months.’ (Testimony of Dr. King, Tr. 134.)
 

 “Indeed, Dr. Norfleet testifies that at the present time she has very little evidence of toxic thyroid.
 
 This fact, taken in connection with the testimony of both doctors that removal from the intense heat of the flare and delivery from the roar of the flame would improve her condition and enable her to become well within a reasonable length of time,
 
 shows definitely that to whatever extent her thyroid condition had progressed by August 1st,
 
 it was made worse and perpetuated so long as the flare was continued in operation.”
 
 Petitioners’ Brief, pp. 10 and 11. (Italics ours).
 

 The above statement in the brief of petitioners shows much more than that. It shows definitely that,
 
 if a nervous and sick woman, like Mrs. Dodd,
 
 could live in the house
 
 and improve in a marked degree
 
 after the
 
 flare
 
 was removed the last of November, 1937, and the
 
 stack
 
 was installed, then
 
 the stack is, by no means, a nuisance which should be abated
 
 by a permanent injunction restraining defendant company from further operation of its gasoline plant.
 

 The
 
 flare
 
 itself had been removed when this case was tried on May 12, 1938, and, if a nuisance at all, had already ceased to exist, as it had been voluntarily abated by defendant company itself.
 

 There is, therefore, no ground left remaining in the case to serve as a proper basis for the issuance of a permanent injunction. For this reason, we do not find it necessary to 'discuss the rule upon the basis of balancing the conveniences.
 

 (5) Nor is there any good or legal reason why Mrs. Dodd should be debarred from recovery in this case because the beginning of her illness was in April, 1936, before the flare was installed, since the full force of the injury to her thyroid gland did not accrue
 
 until after the six-point flare was installed.
 

 “Where a personal injury aggravates an existing ailment or disease, or develops a latent one, the person whose negligence caused the injury is liable to respond in damages for the aggravation of the disease as well as for the original injury. In such case the injury is the prime cause which opens the way to and sets in motion the other cause, and the latter cannot be regarded as the independent cause of the .injury or damage, nor can the wrongdoer be allowed to apportion the measure of responsibility to the initial cause.” Salvador Castelluccio, et al., v. Cloverland Dairy Products Co., Inc., 7 La.App. 534.
 

 
 *16
 
 (6) Mr. R. D. Morgan, the distillate foreman of the Tide Water Oil Company, stated in reference to
 
 the stack:
 
 "Well in my opinion the Glenn Rose gasoline plant has just about the best way of disposing of gas. One hundred fifty (150) feet in the air is in my opinion a very logical place to put it. The gas being lighter than air will dissipate and go on up. It is not dangerous and if there is some unusual occurrence and it was to come down, there is a pilot light there to keep the gas from igniting.” Tr. p. 284.
 

 Mr. J. C. Birdsoll, assistant superintendent of defendant’s plant, gave similar testimony. Tr. pp. 296, 297.
 

 See also testimony of Mr. Paul Schaefer, superintendent of plant to the same effect. Tr. pp. 222-226.
 

 Mr. Morgan, an expert, also testified:
 

 “Q. Have you noticed the side of the stack ? A. Y es.
 

 “Q.
 
 Is it streaked, Mr. Morgan? A. It was streaked on one side when I looked at it.
 

 “Q. Can you explain the cause of streaking? A. That was due — the liquid that was causing the streaking or, rather, the liquid itself was an emulsion from water and it is caused by the fact that carrying a small amount of heavy liquid it would cling to the side of the pipe coming up. The liquid will not leave the pipe, it will • not go over the top and come down but if you have any moisture on the pipe it will mix with that moisture and form this emulsion, ninety-nine (99%) per cent or ninety-eight (98%) per cent water, and run down- the side in little drops.
 

 “Q. . Is the presence of that liquid on the side of the pipe any indication that liquids were sprayed from the stack over the surrounding territory? A. No, sir.” Tr. pp. 277, 278.
 

 (7) The right to rest in peace and quiet in one’s home and the impairment of the enjoyment by petitioners of their home give rise to the opinion of this Court that, while the award to the petitioner, Mrs. Dodd, is adequate, the award to the petitioner, Mr. Dodd, is inadequate and should be increased from $650 to $1,500.
 

 It is therefore ordered that the judgment appealed from be amended by increasing the award made to petitioner, Albertus D. Dodd, from $650 to $1,500, and that the judgment as amended be affirmed, and that defendant, Glen Rose Gasoline Company, Inc., pay all costs of this suit.