This is an action for the abatement of an alleged nuisance in which plaintiffs, James R. Hobson and wife, seek the issuance of an injunction restraining the operation by defendant of a retail fish bait business, together with the recovery of damages allegedly sustained by plaintiffs. After trial there was judgment in favor of defendant rejecting plaintiffs' demands, from which plaintiffs have appealed.
Because the material facts have been so excellently presented in the able and well reasoned opinion of our learned brother of the District Court, and further because the opinion sets forth the impressions gained by the District Judge on the occasion of his examination of the premises, we quote at length from said opinion as follows:
"The business complained of is operated by defendant at his residence and the installations required in connection therewith are located on the residential premises of defendant. Plaintiffs and defendant own their homes, which are situated on adjoining fifty-foot lots just outside of the corporate limits of the town of Jena on the South side of U.S. Highway No. 64. Plaintiffs' house is immediately East of defendant's residence, while the home owned and occupied, by Mrs. Girlinghouse is located on the lot adjoining defendant to the West within a few feet of defendant's house. There is one other dwelling house immediately West of the home of Mrs. Girlinghouse. "Mr. and Mrs. Randal own and occupy their home situated East of plaintiffs' home, with one fifty-foot lot intervening between the homes. On the opposite, or North side of the highway, in the immediate neighborhood, there are two filling stations, a lumber yard, and a residence. The area, therefore, is a mixed residential and commercial area. There are no zoning ordinances controlling the nature of establishments which may be constructed or businesses which may be operated in the territory involved.
"Defendant is employed as a clerk in a store located in Jena, and operates the fish bait business as a side line. He sells minnows and earthworms, to be used as fish bait, and also has on hand small quantities of ice and cold drinks, for the accommodation of his customers. The physical plant, situated on his premises for the operation of said business, consists of the following:
"1. Two large minnow boxes, located in the front yard, containing water in which the minnows are kept alive while awaiting delivery to purchasers.
"2. A small icehouse, also located in his front yard.
"3. A cold drink box, placed near the icehouse, and a large box situated in his *Page 791 
back yard which is filled with dirt, in which earthworms are kept, to be available for sale.
"In order to keep the water in the minnow boxes fresh, perforated pipes are suspended above each of the boxes, and a small, electric water-pump circulates the water from the boxes through the pipes, causing it to be sprayed back into the minnow boxes. Immediately in front of defendant's house, just off the shoulder of the highway, several signs are posted, advertising defendant's business.
"Plaintiffs aver that the business is operated so as to constitute a nuisance in the following respects:
"1. That the signs are so located as to render extremely hazardous passage in and out of plaintiffs' driveway.
"2. That the noise of the water spraying into the minnow boxes is disturbing and annoying.
"3. That the sight of worms being dug from the box disturbs their sensibilities.
"4. That a light suspended over the worm box shines directly into a bedroom window of their house, so as to greatly disturb and annoy them.
"5. That customers of the bait business make so much noise starting and stopping automobiles, slamming doors, playing radios, blowing horns, and carrying on loud conversations with each other so as to render it impossible for plaintiffs to sleep at night or rest properly in the daytime.
"6. That bumping noises are made by putting ice into the icehouse so as to disturb them at night.
"No complaint is made of any vulgar or objectionable statements ever having been made by any of the patrons of the fish bait business. Neither is any complaint made, except as to handling of ice and the noise made by the spraying of water, that defendant or his employees themselves ever created any objectionable noise in the manner of handling any of the products kept for sale.
"The Court, at the request of both the plaintiffs and defendant, visited the area involved and observed carefully all of the physical structures and circumstances bearing any part in the case. A large number of witnesses also testified pro and con as to whether or not the business was operated so as to constitute a nuisance. No evidence was introduced showing the width of the right of way at the point where the signs were located, but inasmuch as they were immediately adjacent to the shoulder of the road and were above the slight depression or road-side ditch, it will be presumed that they were on the highway right of way. That being true, unquestionably, the public authority controlling the highway could require that said signs be removed therefrom. However, plaintiffs can require their removal only if the signs, as located, cause specific injury to plaintiffs in their individual capacities. The Court drove his automobile into and out of plaintiffs' driveway two or three times, observing carefully to what extent the signs interfered with the safe entering or leaving said driveway. The Court experienced no difficulty in bringing his automobile to a stop immediately before backing onto the paved surface of the highway from which position it was possible to see clearly the entire roadway from the West without any interference of vision on account of the signs. A motorist, on the highway approaching plaintiffs' home from the West, could quite easily see a car moving out of plaintiffs' driveway by looking under and on both sides of the sign. The Court, therefore, concludes that the presence of the signs, while creating some slight inconvenience in the use of plaintiffs' driveway, did not create a hazardous condition for one using ordinary care in the use of the driveway. For that reason, the Court does not consider that the maintenance of the signs constituted a private nuisance, subject to abatement by this suit of plaintiffs'.
"The pumping apparatus was placed in operation for the Court's observation. The small, electric motor was almost noiseless, and it is not believed that it could have been heard at all from plaintiffs' residence. The noise made by the spraying water was not very loud and was somewhat similar to that produced by ornamental fountains, which are frequently placed in gardens and courtyards. This slight noise, instead of *Page 792 
being disturbing, would ordinarily be considered of a soothing nature. It is, therefore, not deemed to have constituted a nuisance in any respect.
"The evidence indicated that the worm box was formerly located near plaintiffs' dining room from whence they could have seen worms being removed from the box. It is now located in defendant's back yard, in a place where it could not be seen from plaintiffs' dining room, and apparently, plaintiffs no longer complained of the annoyance to their sensibilities by seeing worms removed from the box. However, even if the operation of removing worms from the box is still visible from any point on plaintiffs' premises, the Court does not consider that the viewing of such an operation would be disturbing to a person of ordinary sensibilities. Accordingly, that factor is not deemed to constitute a nuisance.
"The bedrooms of plaintiffs' home are on the East side of the house. The rear bedroom has windows opening to the East and two windows opening in the South, or rear wall, of their house. The worm box referred to is in defendant's back yard, approximately fifty feet from the rear windows referred to; a light with a rather strong bulb is suspended over the worm box about six feet from the ground. When it is turned on, its rays would shine into plaintiffs' rear windows at an angle of approximately forty-five degrees. It would not afford enough light to make the interior of plaintiffs' bedroom visible from the vicinity of the worm box and would shine directly into only one corner of the room. If any occupants should happen to be in the room when said light was turned on, it would no doubt constitute some inconvenience and annoyance. However, it is not considered by the Court that it would be sufficient to amount to actual physical injury or damage, and, therefore, does not constitute a nuisance. The slight annoyance mentioned above can be completely eliminated by the placing of a shade on the light by defendant, or plaintiffs, at very slight expense, could place a screen on the back porch, across which the light must shine, and thereby prevent the rays of the light from entering the room.
"The evidence showed that defendant kept a small quantity of ice in the small icehouse, which is shown in some of the photographs filed in evidence, for the convenience of his fish bait customers. They could purchase ice for the purpose of preserving the fish and perhaps keeping drinks cold, which they might wish to carry fishing with them. The evidence showed that, ordinarily, ice was delivered to the defendant by the ice company's truck during its regular delivery trips in the daytime. On rare occasions, he exhausted the supply and replenished it by going to the ice plant with his automobile. The Court is convinced that the putting of ice in the icebox at night was such a rare occurrence, and produced such a small amount of noise, that it could by no means be considered as constituting a nuisance."
We think the conclusions set forth in the above quoted portion of the trial Judge's opinion properly and effectively dispose of all of the counts relied upon by plaintiffs as constituting a nuisance with the exception of the excessive noise which allegedly arises from the starting and stopping of automobiles, the slamming of doors, etc., as stated in the specification numbered 5, as above listed in the opinion of the District Court.
It must be conceded that the creation of excessive, unreasonable and disturbing noises, particularly during the night hours, unquestionably constitutes a nuisance, to the abatement of which parties disturbed thereby are entitled. However, it must be borne in mind that noise is not necessarily a nuisance, and a determination of this point can be made only after thorough consideration of all the surrounding circumstances and facts developed in a particular case.
It is impossible to lay down any hard and fast rule inasmuch as numerous factors and elements must be taken into consideration, among which may be briefly noted the character of the locality, the nature of the noises, and the effect thereof upon persons of ordinary sensibilities. The determination of these points rests upon purely factual issues with respect to which the plaintiff in an action of this kind must bear the burden of proof. *Page 793 
The instant case was tried at length and in the course of trial plaintiffs tendered twenty-two witnesses while defendant offered the testimony of sixteen witnesses. The only witnesses who testified on behalf of plaintiff as to the existence of noises of such nature as to make rest and sleep impossible or difficult were the plaintiffs themselves, the daughter and son-in-law of plaintiffs, the nephew of one of plaintiffs, and the mother of one of plaintiffs' counsel. Unquestionably, the factor of relationship and the consequent natural bias arising therefrom is properly to be considered in evaluating the weight of the testimony.
In all good faith these witnesses testified that the noises arising in the course of the conduct of defendant's business on the adjoining property awakened them from sleep, interfered with their rest and quiet, and, in short, excessively disturbed the enjoyment of plaintiffs' home.
Twelve other witnesses were called on behalf of plaintiff in the effort to substantiate the alleged nuisances arising from the operation of defendant's business, particularly the noises caused by customers and the servicing of their needs. Examination of the testimony of these witnesses discloses that ten of them, all of whom were fishermen who had on occasions been patrons of the defendant, not only failed to bear out plaintiffs' claims but stated positively and with varying degrees of emphasis that they had never noticed any disturbance of any nature, or any unusual noises. The other two of this group of witnesses were operators of service stations in the immediate vicinity who opened their businesses at an early morning hour and closed them at various times up to the late hours of night. Both of these men testified unfavorably to plaintiffs' claims, and one of them asserted that he did the loudest talking of anybody in that neighborhood.
In the course of presentation of plaintiffs' case it is established by their witnesses that the neighborhood is of a mixed residential and commercial nature; that across the highway from plaintiffs' property there are a lumber yard and a service station; that a restaurant and another service station are located nearby; that a railroad runs in the rear of plaintiffs' property, and that early every morning at or about 3:00 a.m. a train operates on the track, coupling and uncoupling the engine, switching, taking water, etc., and creating the attendant noises which inevitably result from such operations.
While it is true that the disturbances other than the one of which specific complaint is made are not regarded as defenses, they are nevertheless to be considered in connection with the general picture which reflects the nature and use of the immediate vicinity.
Careful study of the record convinces us that if we chose to predicate our conclusion only upon consideration of plaintiffs' case it would be necessary to hold that plaintiffs had failed to make out and substantiate their allegations with the degree of certainty which is required in actions of this nature. When we additionally consider the evidence submitted by defendant this conclusion is strengthened to the degree of being made certain and assured.
Among the witnesses presented by defendant were several neighbors, one of whom lived next door to the defendant and therefore occupied about the same location with respect to distance as the plaintiffs, and two of whom lived on the opposite side of plaintiffs' property, separated therefrom by a fifty foot lot. Still another witness for defendant had on occasion occupied identically the same rooms in a house across the highway in which one of plaintiffs' witnesses had lived for a time. In other words, the witnesses produced by plaintiffs and defendant respectively had about the same opportunity for observing and noting the effect of any noise or disturbance in the conduct and operation of defendant's business. Their testimony is in violent conflict. By eliminating from discussion the testimony of this group of witnesses on either side as being of equal value, importance and credibility, and therefore constituting a stand-off as to weight and effect, the testimony of other witnesses overwhelmingly preponderates against plaintiffs' contentions. *Page 794 
This is not to say that there was never any unusual noise arising from defendant's operations. On occasions horns were honked; on one, and only one, occasion, according to the preponderance of the testimony, was a radio played in the car of a customer parked at or near defendant's place of business; on one occasion, specifically the morning of July 4th, there was an unusual number of customers. But these are isolated incidents and in no sense of the word have they been established as being of frequent recurrence, much less of that almost continuous character claimed by plaintiffs. And none of these noises could be considered as unusual or tending to increase to any appreciable degree or extent the volume of similar noises which constantly arise in such a neighborhood and which must be borne by those who live on property adjacent to a well traveled highway. The honking of automobile horns, the playing of radios in passing or parked cars, the lumbering noise of logging trucks, the puffing and whistling of railway locomotives, the clanging of tire tools, and the myriad of other similar disturbances which are established by the record as occurring in this specific neighborhood and vicinity are only those noises and sounds which are a part of our times, which are concomitants of progress and which, in a sense, make up some of the slight penalties which we pay as a part of the price of that progress and advancement.
Unquestionably, some of the noises might be considered disturbing to a mild extent. But plaintiffs have failed to establish the loud talking, shouting and calling "back and forth" between defendant's customers. Such a thing is incompatible with the ordinary nature and character of fishermen. Ardent sportsmen rise happily before the first light of day, and prepare to hie themselves to those localities where they feel assured, in their eternal optimism, of a limit catch; they stop en route to furnish themselves with minnows or worms, and while so doing, for the most part, they speak with bated breath, in hushed and almost reverent tones as if they already feared to disturb the unsuspecting denizens of the waters they soon hope to approach. This nature of fisherman is a matter of common knowledge, and if, perchance, nearby residents overhear such persons comparing notes, making inquiries as to the location of the waters where the fish are running best, it should be no cause for disturbance save that which might arise from the envy of those who cannot go fishing.
Cases involving the abatement of nuisances are many and varied. The foundation of the rights of such actions is a matter of codal provision and is set forth in Articles 667, 668 and 669 of our Civil Code. These articles have been oft interpreted and applied in a long line of familiar decisions, most of which are named and relied upon by plaintiffs, including Froelicher v. Oswald Ironworks, 111 La. 705, 35 So. 821, 64 L.R.A. 228; Froelicher v. Southern Marine Works,118 La. 1077, 43 So. 882; Perrin v. Crescent City Stockyard 
Slaughterhouse Co., 119 La. 83, 43 So. 938, 12 Ann.Cas. 903; Orton v. Virginia Carolina Chemical Co., 142 La. 790, 77 So. 632; Carbajal v. Vivien Ice Co., 158 La. 784, 104 So. 715, 41 A.L.R. 623; Di Carlo et ux. v. Laundry Dry Cleaning Service,178 La. 676, 152 So. 327; Talbot v. Stiles (howling dog case), La. App., 189 So. 469; Dodd v. Glen Rose Gasoline Co.,194 La. 1, 193 So. 349; McGee v. Yazoo M. V. R. Co., 206 La. 121,19 So.2d 21; Fos et al. v. Thomassie, La. App., 26 So.2d 402; Borgnemouth Realty Co. v. Gulf Soap Corporation, 212 La. 57,31 So.2d 488.
The facts and surrounding circumstances in all of these cases are of such nature as to make them inappropriate as precedent for the relief herein sought.
The use of injunctive process which interferes with, restricts or restrains the exercise of the rights of those engaged in trade, business or commerce is one which has been carefully safeguarded and one which is not used except in those cases where the established facts are clear and convincing.
In the instant case defendant, a young man some 26 years of age, established his fish bait business as a sideline to his employment in a mercantile establishment in the City of Jena. The property of plaintiffs *Page 795 
and defendant here involved is not located within the limits of the Town of Jena but is outside that municipality, on the principal highway leading through the town. It is shown that defendant has taken all reasonable steps to minimize any disturbances which might possibly arise from the conduct of his business. We are particularly impressed with the fact that he installed a call bell for the use of his customers, obviously for the purpose of eliminating the honking of horns by those who sought to call him for service. The business was conducted by defendant for a period of some twelve months, more or less, prior to the institution of this suit, and its establishment was suffered by plaintiffs without complaint, and, indeed, according to some testimony, with their good wishes. Just when the operation of the business came to be considered a nuisance by plaintiffs is not definitely shown but the facts established by the record indicate that the conditions of which they now complain have not become exaggerated with the passage of time. Rather it appears that whatever has been done in the course of the growth of the enterprise has tended to make its conduct less and less disturbing, if, indeed, its operation has ever been such as would disturb any one.
The evidence does not sufficiently bear out any of plaintiffs' allegations. It has not been established that cars in large numbers were almost constantly parked in front of plaintiffs' property, nor that defendant's customers called in an almost continuous stream from 2:30 or 3:00 o'clock in the morning until and after daylight. On the contrary, plaintiffs were unable to produce, with one or two exceptions, any witness who had called to purchase bait at any such early hour, and these exceptions were isolated instances.
The general principles which have been enunciated by our courts, with reference to the abatement of a nuisance, take into consideration the locality, the reasonableness vel non of the business, the question of a serious and material discomfort to persons of ordinary sensibilities and in a normal state of health. Froelicher v. Southern Marine Works, 118 La. 1077,43 So. 882; Meyer v. Kemper Ice Co., 180 La. 1037, 158 So. 378; Irby v. Panama Ice Co., 184 La. 1082, 168 So. 306; Moss v. Burke Trotti, 198 La. 76, 3 So.2d 281; Myer v. Minard, La. App., 21 So.2d 72; Kellogg v. Mertens, La. App., 30 So.2d 777.
Applying these standards to the facts established in the present case, we have no difficulty in concluding that there is nothing unreasonable or disturbing either in the nature of defendant's business nor in connection with its operation; that the operation of this business is not out of keeping with the locality; and that plaintiffs have failed to show disturbances which would cause material discomfort to persons of ordinary sensibilities in a normal state of health. It necessarily follows, in the light of these conclusions, that the relief sought must be denied.
For the reasons stated, the judgment appealed from is affirmed at appellant's cost.