For the reasons assigned, the judgment appealed from is affirmed.

HAWTHORNE, J., absent.

80 So.2d 845

Clifford E. FONTENOT

v.

MAGNOLIA PETROLEUM CO. et al.

Marvin YOUNG, Sr.

v.

MAGNOLIA PETROLEUM CO. et al.

No. 41552.

April 25, 1955.

Rehearing Denied May 23, 1955.

Isom J. Guillory, Jr., Isom J. Guillory, Eunice, for plaintiffs-appellants.

Liskow & Lewis, Lake Charles, Brewer, Matthews, Nowlin & Macfarlane, San Antonio, Tex., for defendants-appellees.

SIMON, Justice.

Two separate suits were filed against the defendants, Magnolia Petroleum Co. and Petty Geographical Engineering Co., by plaintiffs, Clifford E. Fontenot and Marvin Young, Sr., to recover compensation for damages to their respective residences alleged to have resulted from the negligence of defendants in the use of explosives while conducting geophysical observations in the vicinity of plaintiffs' homes. In the alternative, plaintiffs allege liability of the defendants irrespective of the lack of fault or negligence in the use of these explosives.

Both suits were consolidated for purposes of trial and by agreement of counsel were submitted for decision on the merits at the same time and on the same evidence.

The trial court rendered separate judgments in favor of the defendants, dismissing plaintiffs' respective demands; and the consolidated cases are now before us on appeal. These consolidated cases are filed under one docket number of this Court, and we shall perforce dispose of the issues presented in one opinion but with separate applicable decrees.

The respective residences of plaintiffs are situated in a rural section near Eunice, St. Landry Parish. The home of plaintiff Fontenot was built in the early months of 1946, and that of plaintiff Young in 1947. For all practical purposes both homes were relatively new, of substantial construction, and of modern design and conveniences.

It is alleged that vibrations and concussions radiating in the soil from the point of the explosions conducted by defendants

on July 27, 1948, resulted in the detailed damages complained of. The damages alleged by both plaintiffs bear similar characteristics, consisting mainly of cracks in the walls, ceilings and areas connected with windows and doors, and broken concrete foundations and porch floors. Plaintiff Fontenot claims property damages in the sum of $2,045, $505 for disturbances and the invasion of the privacy of his home, and $500 for future damages as a result of the inconvenience and displacement anticipated when and if his home is repaired, aggregating the sum of $3,050. Plaintiff Young claims property damage in the sum of $3,500, $650 for disturbances and the invasion of the privacy of his home, and $500 for future damages as a result of the inconvenience and displacement anticipated when and if his home is repaired, aggregating the sum of $4,650.

The defendants admit that on July 27, 1948, the Petty Geographical Engineering Co., acting under contract with its codefendant, Magnolia Petroleum Co., conducted geophysical operations in exploring for oil and gas within the vicinity of the homes of plaintiffs; that while engaged in this operation they exploded 10-pound charges of Nitramon "S" at surface depths of 66 feet to 70 feet and at distances of 860 feet to 1,000 feet from plaintiffs' residences. It appears that plaintiff Fontenot had denied the defendants the privilege of entering upon his residence property to conduct these geophysical operations, and that the explosions in relation to his home were conducted on adjoining property; whereas, plaintiff Young orally agreed to allow defendants the right of entry upon his property.

The truth and accuracy of the property damages claimed by plaintiffs to their respective residences are not challenged by defendants, and no attempt was made to disprove these facts. However, defendants strenuously assert that the defective and damaged condition of plaintiffs' homes was not caused through the geophysical operations as conducted by them but resulted from a natural settlement of the earth and poor or defective construction workmanship.

In support of their respective claims, plaintiffs and their wives testified that immediately prior to these operations the defects herein complained of were nonexistent. Plaintiff Young testified that on the day of the explosions he was at his home and observed the preparatory mechanics conducted by the defendants; that when the shots were fired he experienced a feeling as if "a wave was going under me" and which he compared to "standing on a roller of some kind". He did not inspect his home on that day, having no plausible reason for so doing, and it was only on the following day that his wife called his attention to ants having invaded the kitchen. On the second day following the explosions, while spraying ant poison

around his premises, he thereupon discovered the damages complained of.

Mrs. Young testified that on the day in question several explosions were fired in the vicinity of their home, with resulting vibrations, and that shortly after the noon hour a louder blast was of such severity as to cause violent tremors in the floors and windows. These consecutive events, causing apprehension of impending danger, prompted her to leave her home in search of neighborly comfort in the home of Mrs. Fontenot.

Plaintiff Fontenot was absent from his home on the day in question but learned of these activities upon his return that evening. Upon being informed two days later of the complaints of plaintiff Young, Fontenot inspected his own premises and discovered the then existing damages which he testified did not exist prior to these explosions.

Mrs. Fontenot testified that on the day in question, the nearby explosions caused much rattling of the window blinds; that she found cracks and other detailed defects as she house-cleaned on days subsequent, and which were non-existent prior to the date of the explosions.

One Herbert M. Guillory, a lumber contractor and the Vice-President and Executive Manager of the G. J. Deville Lumber Co., Inc., Eunice Branch, estimated the damages complained of and testified from his personal observation of the nature of the damages. He concluded that they were the result of either a large area of soil having been "washed out" beneath the foundations or the foundations themselves having been subjected to some violent shock or concussion.

One Clayton Joseph D'Avy, Jr., an architect, examined these homes and testified that from his scientific knowledge the general cracking complained of by plaintiffs and the actual physical displacement of substantial "masses" of concrete in the foundation, floors and porches could not have been caused by natural settlement but were clearly, in his opinion, the result of sharp and otherwise rapid vibrations of the soil.

Other witnesses testified on behalf of plaintiffs to the effect that these homes were of sound construction, of good and substantial workmanship and of materials of unquestioned worthiness, particularly the concrete poured for their foundations and porches, and which were generally accepted as more than adequate for many future years of security and comfortable occupancy.

Defendants presented evidence to show that their use of explosives in these geophysical operations was reasonable and in accord with the usual, customary and approved methods of conducting such explorations, and that therefore they cannot be held guilty of any fault or negligent act giving rise to a cause of action in favor of plaintiffs. Their explosive experts

testified that, considering the distances separating the points of the explosions from the homes of plaintiffs, it would have been scientifically impossible for the blast of a 10-pound explosive used to have produced vibrations or concussions sufficient to cause the damages complained of. These experts support their conclusions with a detailed and scientific discussion of theories and of experiments made by them during the month of September, 1948, particularly in connection with the use of the "Falling Pin Seismometer", on which was recorded the effect of experimental explosions allegedly fired under the same conditions as existed in relation to the ones complained of by plaintiffs. They all agree that the cause of the defective condition of plaintiffs' homes can be attributed to no cause other than that of natural earth settlement or the use of inferior material and poor workmanship in their construction.

■■■■ In disposing of questions of this character, we are mindful of two important considerations: First, to give the owner of property the largest liberty possible, in the use, occupation and improvement of his own property, consistent with the right to employ modern methods and machinery in accomplishing the improvements desired; and second, that one may not use his own property to the injury of any legal right of another. This maxim of the common law, "Sic utere tuo ut alienum non laedas",[1]

is so well established and so universally recognized that it needs neither argument nor citation of authority in its support.[2]

■■■■ Impressed as we are with the unchallenged and unrebutted proof by plaintiffs, we necessarily conclude that the evidence clearly establishes the claim of plaintiffs in that the general and extensive damages to their homes were non-existent prior to, and were the causal result of, the geophysical operations conducted by defendants. The fact that plaintiffs did not discover these substantial injuries until two days after defendants' operations, or that the homes were of frail or cheap construction (with no substantive proof to support this conclusion) does not in any wise relieve defendants of liability.

Counsel for defendants rely upon the principles of law as expressed in the cases of McIlhenny v. Roxana Petroleum Corp., 10 La.App. 692, 122 So. 165, and Le Bleu v. Shell Petroleum Corp., La.App., 161 So. 214, and from these holdings contend that neither in common law jurisdictions nor under Louisiana law can there be any recovery in the absence of actionable negligence or fault sustained by reason of the operation of a lawful business conducted with due care and according to usual, customary and approved modern methods.

In the case of Devoke v. Yazoo & M. V. R. Co., 211 La. 729, 30 So.2d 816, 820, we

1. "So use your own that you do not injure that of another."

2. 20 A.L.R.2d 1384.

reviewed the jurisprudence under our law and that of the common law states pertinent to various obligations which are imposed upon proprietors towards one another in the use and enjoyment of their property rights. Therein we quoted from the Revised Civil Code, which provides:

" * * * 'Although a proprietor may do with his estate whatever he pleases, still he can not make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him'" LSA–C.C. Article 667, " * * * although it should occasion some inconvenience to his neighbor * * * but not a real damage." LSA–C.C. Article 668.

■ It has been universally recognized that when, as here, the defendant, though without fault, is engaged in a lawful business, conducted according to modern and approved methods and with reasonable care, by such activities causes risk or peril to others, the doctrine of absolute liability is clearly applicable. There can be no legal justification for relieving it of liability and thereby deny compensatory damages to one having no relation to the conducting of such business and thus compel him to bear the unwarranted loss.

In the Devoke case, supra, we also quoted as follows:

"It is the universally accepted rule of law that 'The owner of property has a right to conduct thereon any lawful business not per se a nuisance, as long as the business is so conducted that it will not unreasonably inconvenience a neighbor in the reasonable enjoyment of his property. *But every business, however lawful, must be conducted with due regard to the rights of others, and no one has a right to erect and maintain a nuisance to the injury of his neighbor even in the pursuit of a lawful trade, or to conduct a business on his own land in such a way as will be injurious or offensive to those residing in the vicinity' (39 Am.Jur. 324, Section 43), and liability in such cases does not depend upon the question of negligence.* Sections 4 and 24, pages 282 and 304. See, also, Winfield's Textbook of the Law of Tort, 2d Ed., Sections 133 and 138, pages 481 and 516; Harper on Torts, Sections 180, 181, and 182; 20 R.C.L. 381, Sections 3 and 5; 46 C.J. 663, Section 28; Camfield v. United States, 167 U.S. 518, 17 S.Ct. 864, 42 L.Ed. 260; Dixie Ice Cream Co. v. Blackwell, 217 Ala. 330, 116 So. 348, 58 A.L.R. 1223; Herman v. City of Buffalo, 214 N.Y. 316, 108 N.E. 451; Pearson v. Kansas City, 331 Mo. 885, 55 S.W.2d 485; Toft v. City of Lincoln, 125 Neb. 498, 250 N.W. 748; and other cases referred to in 28 Words and Phrases, Nuisance, pages 930–942.". (Italics ours.)

In the case of Tucker v. Vicksburg, S. & P. R. Co., 125 La. 689, 51 So. 689, we said that the grant and exercise of privileges to one confers no right of the use thereof in disregard of private rights of others. There is a recognized presumptive rule that every man is bound to use his own property or exercise his rights in relation to privileges granted so that he does not injure his neighbor.[3]

We are unwilling to follow any rule which rejects the doctrine of absolute liability in cases of this nature and prefer to base our holding on the doctrine that negligence or fault, in these instances, is not a requisite to liability, irrespective of the fact that the activities resulting in damages are conducted with assumed reasonable care and in accordance with modern and accepted methods.

It follows that clearly the plaintiffs in this instance do not bring an action in tort but one that springs from an obligation imposed upon property owners by the operation of law thereby granting to other property owners the maximum enjoyment in the liberty and use of their property. To hold otherwise would grant the right to conduct operations of a nature as is here involved, and upon its being shown that such activities are conducted in full accord with accepted modern methods, no liability may attach therefor in favor of persons injured.

3. Winfield's Textbook of the Law of Tort.

Defendants contend that plaintiff Young having granted to them the privilege of entering upon his property for the purpose of conducting these geophysical operations absolves them from liability. We find no merit in this contention. True, plaintiff Young orally agreed to permit entrance upon his property for these purposes, but it cannot be said that he expressly or impliedly granted legal immunity to the defendants from liability for any damages suffered by him as a result of these operations.

Defendant does not dispute the correctness of the itemized estimates of cost of repair as contained in the record. It is shown that the cost of repairs in regard to the home of plaintiff Young amounts to the sum of $2,722 (Ex. P-18), and that the cost of repairs to the Fontenot home is the sum of $2,045 (Ex. P-19).

We also conclude that plaintiffs are entitled to recover damages as a result of the invasion of the privacy of their respective homes, the inconvenience occasioned them and the mental anguish suffered by each as a result of these property damages. Actual damages resulting from a wrongful act are not limited to the pecuniary loss sustained thereby. They extend also to the mental and physical suffering which are considered a distinct element of damages and as such are actual and compensatory. Byrne & Co. v. Gardner & Co., 33 La.Ann. 6; Bourge v. Brow-

nell-Drews Lumber Co., 120 La. 1009, 45 So. 972; Jiles v. Venus Community Center, etc., Ass'n, 191 La. 803, 186 So. 342; Dodd v. Glen Rose Gasoline Co., 194 La. 1, 193 So. 349, 353; Humphreys v. Bennett Oil Corporation, 195 La. 531, 197 So. 222; McGee v. Yazoo & M. V. R. Co., 206 La. 121, 19 So.2d 21. We feel that an award of $250 in that respect to each of these plaintiffs is commensurate.

 Plaintiffs' claims for damages as a result of anticipated future inconvenience, if and when their respective homes are repaired, are not supported by any proof whatsoever and are, therefore, accordingly denied.

For the reasons assigned, it is therefore ordered, adjudged and decreed that the judgments of the lower court are reversed, set aside and annulled.

It is further ordered, adjudged and decreed that there be judgment in favor of Marvin Young, Sr., and against the Magnolia Petroleum Co. and the Petty Geographical Engineering Co., in solido, in the sum of $2,972, with legal interest thereon from date of judicial demand until paid.

It is further ordered, adjudged and decreed that there be judgment in favor of Clifford E. Fontenot and against the Magnolia Petroleum Co. and the Petty Geographical Engineering Co., in solido, in the sum of $2,295, with legal interest thereon from date of judicial demand until paid.

All costs of these suits are to be borne by the defendants.