HEARD, Judge.
This suit was instituted by John C. Burgess, James K. Ezell, Mrs. Colleen Hendrix Ezell and A. K. Lowery for damages sustained by plaintiffs due to the action of Globe Exploration Company, Inc. and Shell Oil Company in the use of explosives while conducting geophysical explorations and observations in the vicinity of plaintiffs’ property. Made defendants are Globe Exploration Company, Inc., Shell Oil Company and their liability insurer, Travelers Insurance Company. Each of the four plaintiffs are asserting separate claims. No exception of misjoinder has been filed, nor is *165 being urged. The claim of Burgess is for damages to his house and water well. Judgment was rendered by the trial court dismissing his suit without prejudice because of his failure to prove the extent of his damages. The suit by James K. Ezell is for the cost of replacement of a water system due to the destruction of his water well, replacement of the top of a septic tank, damages to a clothes dryer, replacement of plumbing damaged, and replacement of window panes in the house which he leased. The trial court granted judgment in his favor for $800. Mrs. Colleen H. Ezell sued for and was awarded $200 for personal injuries sustained by reason of the underground explosion. A. K. Lowery was granted the sum of $463 for damages he received to his home. From this judgment defendants have perfected a sus-pensive appeal. Plaintiffs did not appeal nor did they answer the appeal.
This case was tried before Judge Lea S. Thompson; however, due to his untimely death, the decision was rendered by Judge Fred Fudickar without benefit of seeing or hearing the witnesses.
Defendants contend A. K. Lowery failed to prove to a reasonable certainty that his house was damaged, and in the alternative, proof does not show that it was the result of defendants’ action. In Mrs. Ezell’s suit defendants contend that she failed to prove she sustained any personal injuries or that her injuries were caused by defendants’ acts, and alternatively, that the award is excessive. In James K. Ezell’s suit, defendants contend (1) plaintiff failed to prove actions of defendants caused any damage to the house and water well leased from Burgess; (2) there was no evidence that the well was damaged by defendants or that it could not be repaired, and therefore, plaintiff Ezell has no right of action to recover any expenditures as this right belongs to Burgess, owner of the property, and (3) damages have not been proven to a legal certainty nor has plaintiff proven that damage was the results of defendants’ acts. Further, defendants contend that the entire judgment should be reversed and plaintiffs’ demands rejected, or alternatively, modified.
The evidence established that the property claimed to be damaged by defendants is located in a rural area of Ouachita Parish near the village of Cheniere. The house owned by Burgess was rented and occupied by James K. Ezell and wife, Mrs. Colleen Hendrix Ezell. About two and a half blocks from the house owned by Burgess and occupied by the Ezells, is the home of J. K. Lowery and wife, Mrs. Evelyn Fae Lowery. On Aug. 1, 1968 Globe Exploration was doing seismographic work just off Highway 80 near the village of Chen-iere. The work consisted of detonating 15 pounds of dynamite at a depth of 70 or 75 feet. K. W. Butler, an employee of the company, testified on that morning of August 1, 1968 he had fired two shots when he was asked to stop by his supervisor, J. W. Riddle. Milton Smith, Deputy Sheriff, stated he was sent to the scene by the District Attorney on a complaint of a landowner against Globe Exploration Company for doing seismographic work on his property without a permit; that the complaint came about ten o’clock in the morning and when he arrived on the scene he found several holes along the highway and while he was there J. W. Riddle made satisfactory arrangements with Mr. Saxon about a permit. At the same time Mr. Lowery came up and said his house had been damaged by the explosions. Surveyors for defendants established that from the point of the detonations to the property of plaintiffs is 2200 feet. Lowery testified that on the morning of February 1 between eight and nine o’clock he was standing by his breakfast bar when he heard two explosions ; that he immediately called the Sheriff’s Department and that department asked him to call the district attorney which he did and was advised where the detonations were being made and that a deputy sheriff was on the way. Mr. Lowery further testified he immediately left and later met Mr. Riddle and Mr. Milton Smith at the scene of the explosions.
*166 Mrs. Ezell testified she was standing near her sink washing dishes; that she felt a rumble; the house began to quiver and shake with a sound of lumber breaking; and that there were several noises she could not identify at that time. She fixed the time between 8:30 and 9:00 o’clock in the morning. Further testifying, she said she caught onto the sink and when the rumbling stopped, she turned around and saw that her icemaker had pulled away from the wall, as well as the range, and in her excitement she burned her hand on the range. Shortly thereafter she said a second explosion shook the house.
J. W. Riddle testified he was employed by Globe as a party manager on August 1, 1968 as crew supervisor of field operations. He was called on the job when advised by the driller that there was some trouble with a landowner, Mr. Saxon. Milton Smith, Deputy Sheriff, was on the job site when he arrived, and when Lowery came to advise that his house was being damaged, Riddle agreed to go to his home and look at it. After reaching an agreement with Saxon about the permit, he went to Lowery’s home. Over a walkie-talkie before he went into the house, he told his driller to make another shot, which was done, and Riddle said he felt nothing. The shot was barely audible over his walk-ie-talkie.
Lowery testified that as a result of the , explosions his bathroom was damaged; the wall inside a closet fell; the ceiling cracked in the hall; a board near the vent in the kitchen broke and the whole house was pushed forward on its foundation. Three corners of the foundation broke and this ruined his termite protection. His house was of brick construction and a ten inch long crack appeared in the living room wall.
John C. Burgess said he examined the property about three months after the explosions and found that the well was gone, the top of the septic tank blown off, the foundation cracked in several places, particularly in the den and bedroom, and the hall, living room, bedroom and kitchen ceilings were cracked.
Mrs. Ezell testified she heard three explosions. Immediately after these explosions her washing machine stopped running for lack of water, her recently painted house was ruined, the nails protruded through the sheetrock, the light fixtures were down, and the heater vents pulled opt of the sheetrock. The tile was loose from the outside walls, the commode cracked, the top of the septic tank and tile to the tank damaged, and there was no longer any water in the well. She stated further they made arrangements with Nelson Lumber Company for water from its deep well at a cost of more than $800. When the explosions occurred she burned her hand on the kitchen range.
Mr. Ezell testified that the well was dry after the explosion and his cost of obtaining water from Nelson Lumber amounted to $850. It was necessary for him to buy a new septic tank top for $25.
J. M. Waldroup, building contractor, testified that he examined the house owned by Burgess and found it in good condition prior to the explosion. Afterwards the floors and tile were cracked, the nails loose in the sheetrock and the ceilings cracked and damaged. He further stated that the concrete slab under the house would have to be replaced and estimated that raising the building, tearing all of the slab away and replacing plumbing, gas and other lines would cost $10,000.
J. S. James, contractor, stated he built the house of A. K. Lowery and examined it since the explosion. He found several cracks in the wall and woodwork and the brick shifting on the foundation. His estimate for repair was $738.
Mr. J. W. Riddle stated he inspected Lowery’s house shortly after the explosion and could see only old damage; that he saw no fresh cracks; that he did see the tile floor was cracked, the ceilings and walls cracked but that there was cobwebs *167 in them and it was not fresh looking damage. There was no visible evidence of damage to the foundation. He further testified that he inspected the Burgess house on a later occasion but found no fresh looking damage; that there had been some digging at the septic tank and on the line leading to it but it was difficult to determine whether it was damaged or whether there had just been digging in it. Mr. C. M. Hardy, employed by Haig Engineering Company of Dallas was called by defendant as an expert engineer with considerable experience involving explosions. His testimony in substance was that 10,000 pounds of dynamite exploded at 2,000 feet would be required to have done any damage to plaintiffs’ premises. He identified a bulletin from the Bureau of Mines which indicated that the damage to plaintiffs could not have happened by the explosives used from a distance of 2200 feet. After an examination of Burgess’ home he could find nothing attributable to the explosion.
The first question for determination is whether plaintiffs have proven by a preponderance of the evidence that the damage was caused by the dynamite charges set off by defendants. On plaintiffs’ side we have the testimony of the Lowerys, Ezells, J. C. Burgess, J. S. James and J. M. Waldroup that the property was in good condition prior to the explosion and was damaged immediately after the explosion. Opposed to plaintiffs’ testimony is defendants’ testimony that even though the explosions occurred, it was impossible for this to have caused the damage alleged by plaintiffs.
.It is well settled that the obligation enforced upon proprietors by LSA-C.C. Art. 667 is absolute and proof of negligence is not required in order to recover for a violation or breach thereof. See Selle v. Kleamenakis, La.App., 142 So.2d 50 (4th Cir. 1962); Bruno v. Employers’ Liability Assurance Corporation, La.App., 67 So.2d 920 (Orl.1953); and Hauck v. Brunet, La.App., 50 So.2d 495 (Orl.1951).
In Pate v. Western Geophysical Company of America, La.App., 91 So.2d 431 (2d Cir. 1956) the court found that defendant in carrying on geophysical operations exploded charges of high explosives in quantities of 15 to 20 pounds each within 800 feet of the Hulion residence and within 2900 feet of the Pate residence. Other shots were made of similar size and character in the vicinity at greater distances from the two buildings. The court said:
“ * * * The effect of Dr. Leet’s most informative and learned scientific explanations would lead to the conclusion, which he expressed in most positive terms, that defendant’s operations could not and did not cause the damages as plaintiffs alleged; but, as opposed to this scientific hypothesis, we are confronted with the fact, overwhelmingly established by the evidence, that the damages occurred immediately following defendant’s operations. To ascribe this fact to sheer coincidence would be a speculative and illogical procedure. Again, while it may be said that such testimony establishes the so-called scientific impossibility of the damage resulting from the explosive operations, the fact is that the only reasonable conclusion is that such damage was caused by and is attributable to defendant’s operations.”
[91 So.2d 431, 433]
Further quoting from Pate, the court stated:
“Diametrically opposed to defendant’s theory and contention is the conclusion reached by the Supreme Court in Fontenot v. Magnolia Petroleum Co., 227 La. 866, 80 So.2d 845, 848, that similar geophysical exploratory operations, where only 10 pound quantities of the explosives were used, approximately one-half of the charges used in the instant cases, did cause similar damages, such as cracks in the walls, ceilings and areas connected with windows and doors and broken concrete foundations and porch *168 floors to buildings located on plaintiffs’ premises. * * *”
* * * * * *
“Recovery by plaintiff was permitted under the doctrine of absolute liability, the court saying:
‘We are unwilling to follow any rule which rejects the doctrine of absolute liability in cases of this nature and prefer to base our holding on the doctrine that negligence or fault, in these instances, is not a requisite to liability, irrespective of the fact that the activities resulting in damages were conducted with assumed reasonable care and in accordance with modern and accepted methods.’ ”
[91 So.2d 431, 433, 434]
In applying the rule of law as announced in these cases we are in accord with the trial court that defendants are liable for the damages caused to plaintiffs.
J. C. Burgess, in establishing his damages, produced the witness J. M. Wal-droup who testified he examined Burgess’ property after he bought it and at that time it was in good condition. After the explosion the floors were cracked as well as the tile, and nails torn loose in the sheet-rock ceiling. In his opinion the house would have to be jacked up, a new slab foundation placed underneath, plumbing replaced and gas and other lines installed at a cost of $10,000. He failed to break down his estimate in detail and most of the work was to be done by subcontractors who did not appear to testify. The trial court found that his testimony was replete with speculation, conjecture and apparent insufficient preparation, and dismissed his claim without prejudice.
Dismissal is dealt with specifically under LSA-C.C.P. Arts. 1671-1673 and 1844. LSA-C.C.P. Art. 1671 provides:
“A judgment dismissing an action without prejudice shall be rendered upon application of the plaintiff and upon his payment of all costs, if the application is made prior to a general appearance by the defendant. If the application is made after a general appearance, the court may refuse to grant the judgment of dismissal except with prejudice.”
Comment (b) under this article states:
“After an appearance, the plaintiff’s right to dismiss rests within the sound discretion of the court. In this connection it should be noted that if a plaintiff fails to make out his case for lack of sufficient evidence which it appears he will be able to supply later, his rights should be preserved for another occasion by granting a judgment of nonsuit. Logan v. Schuler, 220 La. S80, 57 So.2d 193 (1952). However, if it appears plaintiff will not be able to substantiate his claim, a judgment of absolute dismissal must be rendered. Strother v. Villere Coal Co., 15 So.2d 383. (La.App.1943).”
In Logan the Supreme Court dismissed as of nonsuit (without prejudice) plaintiff’s claim for commissions for insurance companies he was not licensed to represent. This was to give plaintiff an opportunity to obtain a license and recover the commissions. Justice McCaleb dissented saying that plaintiff’s suit should be dismissed absolutely and not as of nonsuit. Justice McCaleb felt that plaintiff failed to sustain his case not for lack of proof but because he was without a cause of action, saying:
“A judgment of nonsuit is appropriate * * * in cases in which a plaintiff has failed to establish his claim with reasonable certainty, that is, where his cause or right of action might have been proved but, for some reason, he has not presented sufficient evidence to maintain * * *»
[57 So.2d 193, 196]
Other cases granting nonsuits (dismissals without prejudice) for plaintiff’s failure to prove his cause of action are Coleman v. Forsythe, 137 La. 1092, 69 So. 849 (1915); Parish of Jefferson v. Doody, La.App., 167 So.2d 489 (4th Cir. 1964) and Papa v. *169 Louisiana Metal Awning Company, La.App., 131 So.2d 114 (2d Cir. 1961).
While cases should not be left dangling where plaintiff has not met his burden of proof, we feel that he should not be penalized where he has a legitimate claim which fails because his witness was unprepared. Burgess’ claim was rejected because Wal-droup was unprepared and because his attorney did not call the subcontractors for electrical wiring and well repair. It would seem to be in the interests of justice and in the trial judge’s discretion to dismiss his claim without prejudice in this case.
Ezell testified that after the explosion there was no water in his well and it was necessary to run a line to a deep well owned by Nelson Lumber Company at an expenditure of $800. This evidence is reasonable and clear without contradiction and it was the finding of the district court that this amount was amply proven. We find no manifest error in this ruling.
As to A. K. Lowery’s damages, J. S. James testified that it would require $738 to repair the house to its prior condition. This included $275 for repainting outside woodwork with two coats of paint. The trial court failed to find any necessity for two coats as it was not substantiated by the evidence. We fail to find manifest error in this decision. Judgment was granted for $463, which we hereby affirm.
The remaining item of damage is to Mrs. Ezell for $200 for shock and burns to her hand. Her testimony is clear and uncontradicted. Therefore, we affirm the court’s decision on this item of damage.
For the reasons set forth herein, the judgment of the trial court is affirmed. Costs are assessed to appellants.
HALL, J., concurs with written reasons.