281 So.2d 785 (1973)
Leslie L. ROSHONG, Plaintiff-Appellant,
v.
TRAVELERS INSURANCE COMPANY et al., Defendants-Appellees.
No. 4268.
Court of Appeal of Louisiana, Third Circuit.
August 20, 1973.
*786 Roy B. Tuck, Jr., Leesville, for plaintiff-appellant.
Hall & Coltharp by H. O. Lestage, III, DeRidder, for defendants-appellees.
Before HOOD, CULPEPPER and MILLER, JJ.
MILLER, Judge.
Plaintiff Leslie L. Roshong appeals seeking an increase in the award for damages caused to his house by seismic operations conducted by defendant Seismic Engineering Company under contract to defendant Placid Oil Company, both insured by defendant Travelers Insurance Company. We amend to increase the $710 awarded by the trial court.
Roshong's brick veneer house was constructed on a floating slab and was built in two phases. The north structure consisting of 1456 square feet was completed in March of 1964, and a 964 square foot addition (to the south) was completed in April 1968. The same contractor, Mr. R. C. Thompson, built both portions of the house for a total price of $23,104.
The house was built on the slope of a hill after a bulldozer was used to cut the hill and spread the surplus earth in the front yard. The foundation rested on solid clay.
On August 20, 1969 at 3:45 p. m. Seismic detonated a 20 pound charge of dynamite which had been deposited at a depth from 92 feet down to 100 feet below the surface of the earth. This charge was set at a point approximately 1080 feet north of the north edge of Roshong's house. At 4:05 p. m. a similar charge was detonated at a point 545 feet south of the south edge of Roshong's house. The first charge was not noticed by the residents in the area, but the second charge "ventilated" or blew out of the hole.
According to Mr. and Mrs. Roshong, Mrs. Annie Stephens White, Mr. Ronny Mack Redmond, Mr. and Mrs. Clarence B. Dye, and Barbara Rae Sellers, the "shot" startled everyone in the area. Mr. and Mrs. Dye live some 450 to 600 feet northeast of the Roshongs. Mr. Dye was in the yard and felt the blast. Mrs. Dye was inside their frame house and she heard the loud noise and felt her whole house vibrate. Three of these witnesses were in the Roshong house when the charge was detonated and each testified that the concrete floor shook and the windows rattled. Two witnesses were in Roshong's garage located 150 feet from the house and each testified that he felt the earth shake.
All of these witnesses, except the Dyes who did not visit the Roshongs, testified that there were no defects in the Roshong house before the August 1969 blasts. Within two days after the blasts certain damages to the Roshong house began to show up. Mr. Dye testified that five water wells in the vicinity went dry shortly after the blasts and one of those wells was his. So far as the record shows there has been no claim filed for damage to a water well.
Mr. R. C. Thompson testified that he had been a construction worker for thirty years and a general contractor since 1955. *787 He built many homes to FHA and VA standards and testified that the Roshong house was built to meet these standards; that of the numerous houses and churches he built in the area, none have developed problems similar to those presented by the Roshong house. Mr. Thompson testified that the four inch thick slab and 24 inch footings for the north structure were reinforced and were poured in one pour. The south addition was constructed to the same specifications. Both slabs were laid out level. The union bricklayer who had 26 years' experience as a bricklayer, verified that the slabs were level.
Defendants seek to discredit Thompson because he did not have a State license as a contractor and was therefore limited to construction of units which cost less than $30,000. It was also pointed out that as of the trial date, Thompson was no longer a contractor. He was then operating a grocery and restaurant business. The trial court discredited Thompson and the bricklayer because they had an interest in defending their own work.
Plaintiff called Mr. H. F. McMullen, an expert contractor, who found that the Roshong house was built to average standards for houses constructed in Vernon Parish. McMullen had examined houses for the Veteran's Administration to determine that VA standards were met. He had inspected only one of Thompson's houses, and found that it met the standards. This witness was discounted by the trial court because he testified that he did not know whether or not the explosion caused the damage.
Plaintiff also called Mr. Frank Riley as an expert contractor. Riley verified that the standard of construction was satisfactory. His testimony was discounted because he had known Roshong for seven years.
As against plaintiff's four experts and five lay witnesses (the lay witnesses testified that the house was free from defects prior to the August 1969 blasts, and that numerous defects showed up immediately thereafter), the trial court accepted the opinions of defendants' experts Mr. E. E. Taylor and Mr. Eugene Buckholtz. It was held that ". . . more weight should be given to the affirmative and disinterested testimony of defendants' expert witness in the case ..." Both Taylor and Buckholtz testified that the slab must have been laid improperly and that many of the defects were due to faulty construction and antedated the explosions. They stated that such damage could be accounted for due to natural settlement of the earth or to defective construction workmanship. But no soil analysis tests were taken and there is no fact cited to support their opinion that the earth settled before defendants' blasts. There was no showing that the foundation and slab, the fireplace and chimney were defectively constructed. There was evidence that the flashing around the chimney was not properly installed, but this would not account for the broken bricks in and the leaning of the chimney.
Mr. Taylor testified that the air concussion or movement could possibly cause some of the damage found in Roshong's house. Tr. 300. However, he testified at length and cited impressive authority to support his conclusion that these "shots" could not possibly have disturbed the earth near and under Roshong's house. Taylor examined the house one time in December 1969 and took 29 color pictures depicting the condition of the house as of that date. By the time of the 1971 trial, the small cracks found in December 1969 had substantially increased. The broken slab (which was only cracked as of December 1969) had settled on the north end of the house some five and one-half inches below the level at the center of the house.
The trial court found that Taylor and Buckholtz agreed that the air-born shock wave (which started some 545 feet south of Roshong's house) damaged the north part of Roshong's house by breaking a window, breaking some bricks in the walls, and "popping" the panelling inside the *788 house. Buckholtz testified that it would cost $710 to repair this damage and this amount was awarded as damages. The trial court rejected the claim for damages relating to the broken slab, the 5½ inch sinking of the slab at the north end of the house, and the cracking and tilting of the fireplace and chimney.
At trial defendants denied that the blasts damaged Roshong's house, but defendants have not answered the appeal. It is therefore admitted that the blasts or at least one blast caused damages to Roshong's house. The only issue concerns the extent of the damage.
The two issues for determination are whether or not the seismic explosions were the cause in fact of all injuries complained of by Roshong, and if they were, what actual damages were suffered.
We find manifest error in the determination that the damage to the slab, fireplace and chimney is not related to the damage which defendants' experts admit was caused by the blast or blasts. The evidence convinces us that the stress which broke bricks and "popped" the prefinished plywood interior wall board off studs (damages which defendants originally denied but have now, in effect, admitted) is related to the break in the slab, the fireplace and the leaning chimney. To award damages for the one and not the other is to disregard an established relationship between these damages. In addition, we find that the expert testimony of the two witnesses (who stated that the injury sustained under the circumstances could not possibly have been caused by the seismic explosions) legally insufficient to rebut the prima facie case established by Roshong. Five witnesses testified that damage to the structure was nonexistent at the time of the blasts and became apparent within two days of the explosions. The evidence supports a conclusion that all damage found by the experts is related to the seismic explorations, and that these explorations were a cause in fact of all the damage.
We agree with the trial court's conclusion that the doctrine of strict liability applies in this case. LSA-C.C. Art. 667; Fontenot v. Magnolia Petroleum Co., 227 La. 866, 80 So.2d 845 (1955); Langlinais v. Geophysical Service, Inc., 237 La. 585, 111 So.2d 781 (1959); Pate v. Western Geophysical Co. of America, 91 So.2d 431 (La.App. 2 Cir. 1956); Wright v. Superior Oil Company, 138 So.2d 688 (La.App. 3 Cir. 1962); Gullatt v. Ashland Oil & Refining Company, 243 So.2d 820 (La.App. 2 Cir. 1971); Burgess v. Travelers Insurance Company, 254 So.2d 163 (La.App. 2 Cir. 1971). The facts of this case are more favorable to Roshong than were the facts in the above cases where plaintiffs were successful.
Defendants' arguments that the damage was primarily due to faulty workmanship in the construction of the Roshong house is without merit. A close examination of the leading case of Fontenot v. Magnolia Petroleum Co., supra, shows that faulty workmanship in the construction of the house was alleged. This did not relieve defendants of liability for the extensive repairs needed after the blasts. In Fontenot, the court stated:
". . . defendants strenuously assert that the defective and damaged condition of plaintiffs' homes was not caused through the geophysical operations as conducted by them but resulted from a natural settlement of the earth and poor or defective construction workmanship." 80 So.2d 845, at 847.
* * * * * *
"The fact that plaintiffs did not discover these substantial injuries until two days after defendants' operations, or that the homes were of frail or cheap construction (with no substantial proof to support this conclusion) does not in any wise relieve defendants of liability." 80 So.2d 845 at 848.
Having thus found that the seismic exploration was the cause in fact of *789 the damage to the structure, proof of faulty workmanship in the original construction, even if it had been clearly established, would be legally insignificant to the matter of causation. The tortfeasor must take plaintiff as he finds him. This is not to say, however, that inferior quality of the item damaged may not be introduced for the purpose of proving the true value of the item damaged in order to decrease quantum. In this case, however, the evidence was insufficient to prove that the alleged faulty workmanship was related to the damage to the slab, the fireplace and the leaning chimney.

QUANTUM
When it is clear that a plaintiff has sustained some damage as a result of defendants' fault, his demands will not be rejected merely because he cannot establish exactly the amounts suffered. Under such circumstances the court must fix quantum as best it can. Fontenot v. Magnolia Petroleum Co., 227 La. 866, 80 So.2d 845 (1955); Brantley v. Tremont & Gulf Railway Co., 226 La. 176, 75 So.2d 236 (1954).
In awarding property damages to a party who has been injured through the legal fault of another, the primary objective is to restore the injured party in as near a fashion as possible to the state in existence at the time immediately preceding the injury. Several tests have been formulated in order to realize this goal. In Granger v. Bouillion, 220 So.2d 764 (La.App. 1 Cir. 1969), and in Davis v. Roberts, 194 So.2d 772 (La.App. 1 Cir. 1967), it was recognized that three tests have been utilized in determining damages. The first is the cost of restoration, if the damaged object cannot be adequately repaired. The second is the difference in value of the damaged property preceding and subsequent to the injury. The third is if the value before and after damage cannot be fairly determined or if the cost of repairs exceeds the value of the thing damaged, damages should equal the replacement cost less depreciation.
In order to maintain the flexibility necessary to promote substantial justice to the parties in each instance, the test for damages selected, if one is appropos at all, is the one best fitted to the particular facts of each case.
The first test is inapplicable, since the damaged object can be adequately repaired. If the third test was applied, damages would be excessive, since Roshong would then have $26,000 (a sufficient amount to construct a house of similar nature), and would still own the damaged structure. It was shown that the structure is currently neither valueless nor uninhabitable. Application of the third test would thus put Roshong not in a position similar to that in which he was situated prior to the blasts, but in a far superior one.
The alternate demand by Roshong does substantial justice to the parties. It was estimated that Roshong's house had a normal useful life of fifty years when it was built; that its depreciated value as of the date the damage was suffered was $20,800; and that because of the damage, the useful life of Roshong's house had been reduced by one-half. Therefore plaintiff Roshong is entitled to an award of $10,400.
The award of $10,400 is in keeping with our finding of the difference in value of Roshong's house prior to the damage as compared to the value following the damage, the second test for damages listed above. See Granger v. Bouillion, 220 So.2d 764 (La.App. 1 Cir. 1969).
Additionally, Roshong seeks general damages for the mental anguish, humiliation and embarrassment alleged to have been suffered as a result of the extensive damage to his home and the refusal of defendants to make restitution. Because of the damage he moved from his home for a two month period. The extensive *790 repairs will cause him untold inconvenience and mental anguish. Plaintiff is entitled to recover damages as a result of the invasion of privacy, the inconvenience occasioned and the mental anguish suffered as a result of the property damages. Fontenot v. Magnolia Petroleum Company, 227 La. 866, 80 So.2d 845 at 850 (1955). An award of general damages totaling $1,500 is proper.
The trial court judgment is amended to increase the damages awarded plaintiff Leslie L. Roshong from the sum of $710 to the sum of $11,900, together with legal interest from date of judicial demand. All costs of court are assessed to defendants. As amended the trial court judgment is affirmed.
Amended and affirmed.
HOOD, J., dissents, being of the opinion that the judgment of the trial court is correct.