385 So.2d 533 (1980)
Saule SCHEXNEIDER, Plaintiff-Appellee,
v.
UNITED GEOPHYSICAL CORP. et al., Defendants-Appellants.
No. 7560.
Court of Appeal of Louisiana, Third Circuit.
May 21, 1980.
Rehearing Denied July 16, 1980.
*534 Davidson, Meaux, Sonnier & Roy, John E. McElligott, Jr., Lafayette, for defendants-appellants.
John Rixie Mouton, Lafayette, for plaintiff-appellee.
Before FORET, SWIFT and STOKER, JJ.
FORET, Judge.
The plaintiff, Saule Schexneider, brought this action to recover damages to his deep water well caused by the defendants' seismographic operations. The trial court found for the plaintiff and awarded damages in the amount of $13,600.00. We amend and affirm.
In early 1978, the defendants, Atlantic Richfield, United Geophysical Corporation, and Joseph Faulk were engaged in seismographic operations on the plaintiff's land. The tests were conducted by exploding one-pound shots in the ground and measuring the vibrations. One such test was made within 287 feet of the plaintiff's deep water well which was used for irrigation purposes.
The deep water well was drilled in 1962 and was used to irrigate approximately 75 acres of land yearly. This land was used primarily for rice farming by the plaintiff's son-in-law, Robert Landry.
Shortly before the seismic tests, Mr. Landry had used the irrigation well to flood approximately 20 acres of rice land for duck hunting. At that time, Mr. Landry testified, the well operated to its usual capacity with normal efficiency. The next time the well was used, several weeks after the seismic operations, the plaintiff discovered the well's capacity was reduced in half.
The trial judge found that the detonation of the one-pound charge 287 feet from the well caused a diminution in the capacity of the well which rendered it unsuitable for irrigation purposes.
The defendants argue on appeal that the trial judge committed manifest error in his factual determination that the reduced productivity from the well was caused by the seismic operations. We disagree.
At the outset it must be observed that the doctrine of strict liability applies in this case. Roshong v. Travelers Insurance Company, 281 So.2d 785 (La.App. 3 Cir. 1973). LSA-C.C. Article 667.
In addition to the plaintiff and his son-in-law, Mr. Landry, who both testified that the well's capacity had decreased by approximately one-half as a result of the seismic *535 operations, the trial court heard testimony from Mr. Willie Arceneaux, vice-president of Stamm-Sheele, Inc., a well service and drilling corporation from Rayne, Louisiana.
Mr. Arceneaux, who has been in the deep water well drilling business since 1946 and supervised the drilling of the plaintiff's well in 1962, visited and examined the plaintiff's well on February 15, 1979. He was familiar with the capacity of the well prior to the defendants' seismic operations, having examined the well approximately three years before the seismic tests were made. Mr. Arceneaux testified that when he examined the well after the seismic operations it was producing from about one-half to two-thirds of its capacity. He further explained that when the capacity of a well is decreased by the well's sanding up, the decrease comes about slowly and progressively, and the same applies when the decrease in productivity is caused by a falling water table. Due to the sudden decreased efficiency of the plaintiff's well, Mr. Arceneaux ruled out both of those possible explanations for the trouble.
Mr. Arceneaux noted the presence of oil on the water which indicated that one of the seals in the well had been jarred out of place, permitting air to enter the pumping system and causing the decrease in volume. He explained that he had never seen this type of defect occur unless the seal was damaged by an explosion. This witness also testified that the mud and sand seen by Mr. Schexneider, when he used the well after the seismic operations, could only have been caused by a vibration in the formation which moved the unconsolidated material around the screen in the well.
Mr. Arceneaux further testified that in his opinion the seals in the well which had been jarred out of place could be replaced for the sum of $3,500.00 or $4,000.00. However, this would not eliminate the problem of the well sanding up. The only way to alleviate this problem would be to pull out the well and go back into the hole, which would be a costly operation, with no guarantee of success. Consequently, he recommended that this well be abandoned and a new well drilled which could be done at a cost of $15,000.00.
The defendants produced two witnesses to say that in their opinion the decreased productivity of plaintiff's irrigation well was not caused by the seismic tests. However, an examination of their qualifications and testimony reveal that the trial court was not clearly wrong in accepting the testimony of Mr. Arceneaux over that of the defendants' experts. The latter had no experience with irrigation wells, knew very little about the operation and component parts of irrigation wells, and the gist of their testimony was that they had not experienced any detriment to irrigation wells resulting from seismic tests. However, neither testified that they had ever detonated explosives within 287 feet of an irrigation well. On the contrary, Mr. Arceneaux, plaintiff's witness, had a great deal of experience with irrigation wells, and considerable experience with such wells being damaged by seismic tests being conducted too close to such wells.
It is well settled that a trial judge's factual determinations are entitled to great weight and should not be disturbed unless clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). Our review of the record reveals ample support for the trial court's factual conclusions. We are satisfied that the defendants' operations caused the damage to the plaintiff's deep water well.
Defendants-appellants' second contention on appeal is that the court erred in setting the amount of plaintiff's damages. Speaking to this issue, the trial judge said:
"Mr. Arceneaux, expert for plaintiff, testified it would cost $15,000.00 to dig a new well and install a new pump in the event plaintiff's pump could not be moved. The court takes notice of the fact that plaintiff's well is seventeen years old and therefore reduces above estimate by $3,000.00 for depreciation leaving a balance of $12,000.00."
Additionally, the court awarded $1,600.00 to the plaintiff representing the cost of additional *536 fuel and oil used as a result of the well's damaged condition.
In Roshong v. Travelers Insurance Company, supra, at page 789, we said:
"In awarding property damages to a party who has been injured through the legal fault of another, the primary objective is to restore the injured party in as near a fashion as possible to the state in existence at the time immediately preceding the injury. Several tests have been formulated in order to realize this goal. In Granger v. Bouillion, 220 So.2d 764 (La.App. 1 Cir. 1969), and in Davis v. Roberts, 194 So.2d 772 (La.App. 1 Cir. 1967), it was recognized that three tests have been utilized in determining damages. The first is the cost of restoration, if the damaged object cannot be adequately repaired. The second is the difference in value of the damaged property preceding and subsequent to the injury. The third is if the value before and after damage cannot be fairly determined or if the cost of repairs exceeds the value of the thing damaged, damages should equal the replacement cost less depreciation.
In order to maintain the flexibility necessary to promote substantial justice to the parties in each instance, the test for damages selected, if one is appropos at all, is the one best fitted to the particular facts of each case."
We believe that the fairest method of setting damages in the present case is replacement cost less depreciation because there is no evidence of the value of the property prior to and after the damage. Gullatt v. Ashland Oil & Refining Company, 243 So.2d 820 (La.App. 2 Cir. 1971). The trial court, based on Mr. Arceneaux's testimony, determined that the well could be replaced for $15,000.00. The court then subtracted $3,000.00 for depreciation and arrived at a balance of $12,000.00 for the cost of the new well. The trial court erred in not adequately figuring the amount of depreciation.
In Gullatt, supra, the plaintiff's well was thirteen years old at the time it was damaged. There was evidence in the record which indicated that the well had a life expectancy of from ten to forty years. Based on that information, the court allowed for a reasonable depreciation factor of one-third.
The difficulty in figuring the exact amount of recovery to which the plaintiff is entitled does not mean that his demands should be rejected. In these circumstances, the court must set the amount of damages in the fairest possible manner. Roshong v. Travelers Insurance Company, supra.
The plaintiff's expert, Mr. Arceneaux, estimated that the plaintiff's well had a life expectancy of twenty-five to thirty years. Using the thirty-year figure, based on seventeen years of use, it follows that the normal life of the well has been consumed by approximately 56%. Accordingly, the cost of replacement should be 44% of the cost of a new well, or $6,600.00.
The trial court's lesser amount for depreciation is in error because it places the plaintiff in a far superior position than he was in prior to the seismographic operations.
The trial court's award of $1,600.00 for the cost of additional fuel and oil consumed by the well as a result of the well's damaged condition was proper. Adding that amount to the $6,600.00, the correct amount of damages to which the plaintiff is entitled is $8,200.00, plus interest from date of judicial demand.
For the above and foregoing reasons, the judgment of the trial court is amended to reduce the total award to the plaintiff to $8,200.00, and as amended, is affirmed.
Costs of this appeal are assessed one-half to plaintiff and one-half to defendants.
AMENDED AND AFFIRMED.