451 So.2d 644 (1984)
Clifford PRICE, et al., Plaintiffs-Appellees,
v.
STATE of Louisiana, et al., Defendants-Appellants.
No. 83-660.
Court of Appeal of Louisiana, Third Circuit.
May 16, 1984.
*645 Tommy D. Teague, and Charles E. Grey, Jr., Baton Rouge, for defendants-appellants.
John R. Hickman, Voltz & Ware, Gus Voltz, II, Alexandria, for plaintiffs-appellees.
Before FORET, LABORDE and YELVERTON, JJ.
YELVERTON, Judge.
The plaintiffs, 42 landowners, brought this action to recover damages to their property allegedly caused by the defendant's military demolition exercises. The trial court awarded judgment in favor of 26 of them in the total amount of $137,035.66, and dismissed the suit as to the 16 other plaintiffs. From that judgment the defendant appeals. We amend and affirm. Since the 16 unsuccessful plaintiffs have not appealed that part of the judgment is not before this court.
The two issues on appeal are causation and damages. Defendant contends that there was manifest error in the trial court's determination that the exercises caused the damages to the plaintiffs' homes, and also in its award of damages. We will take up these issues after first recounting the facts as gleaned from the extensive record.
FACTS
In the summer of 1976 demolition training exercises began at Camp Beauregard, a training facility of the Louisiana National Guard. The exercises continued for several months ending in 1977.
The 26 successful plaintiffs live in a community known as Hickory Grove. They claimed that their property was damaged by the demolition exercises. All testified that their property was undamaged before the start of the demolition exercises but damage to their residences began to manifest itself in the fall of 1976 and thereafter.
The effects of the explosions in most cases were similar: cracks in slabs, carports, mortar and bricks, tile and sheetrock, and broken windows. All of the plaintiffs who were present in their homes when the exercises took place testified that on numerous occasions the explosions would shake their homes with severe vibrations. In many instances the explosions resulted in pictures and other objects falling from the walls.
Eyewitness accounts of damage concomitant with explosions included the following examples: One plaintiff, Edward Belgard, testified that during an explosion the light fixtures rattled and he heard the sheetrock crack. Upon entering his child's room he observed paint and particles on the floor from the crack in the wall. Hyman O'Neal, another plaintiff, testified that he began to notice particles of mortar on his carport in the winter of 1976 after the explosions occurred. He also discovered that the mortar was falling from his chimney. On March 12, 1977, he saw and measured a crack in the bricks of the chimney. The following day two explosions occurred and the crack extended approximately one foot.
Petitioner Josh Paulk testified that once while members of the National Guard were at his residence inspecting the damage, an explosion was set off which extended an *646 existing crack two or three inches. Richard Nugent testified that on a Sunday in March 1977 an explosion took place and particles of mortar fell down his fireplace. He inspected it and found that the back of the chimney had cracked and shifted approximately one inch. He also stated that the sheetrock in his back room had cracked. Cecil Paulk testified that after an explosion occurred in October of 1976 he walked outside and noticed that his slab on his back porch had cracked. According to his wife the kitchen sink jerked loose after an explosion. Roland Paulk testified that upon returning home on March 13, 1977, he discovered approximately one-third of his ceiling tile on the floor. Oscar Moore related that he overlaid his carport with cement in March of 1977. On a following Sunday in March an explosion occurred which jarred his house. He immediately ran outside and discovered two fresh cracks in his carport. He also stated that in October 1976 a charge went off while his wife was in the bathroom and ceramic tile fell onto the floor. Another plaintiff, Jimmy Nugent, said that during an explosion a clock fell off the wall and afterwards he noticed a crack in his porch and cracks in the tiles of his bathroom. He stated that he would have noticed such damage prior to the explosion if it had been there. He also discovered that the cabinets in his kitchen had pulled loose after an explosion. Frank Jordan testified that he was standing in the living room when a blast occurred which caused a crack in his window.
A consulting structural engineer, Frank Beard, took photographs and testified as an expert for plaintiffs. Many of the photographs of the plaintiffs' homes revealed vertical cracks through the bricks. According to this expert, these cracks were indicative of an exterior force applied to the structure above the foundation. Many of the photographs also showed cracks of diagonal characteristics which would be indicative of settlement of the foundation. This expert explained that the soil located in the area is clay which will periodically swell and then shrink. The settlement potential in the soil could have been aggravated by seismic activity. This, according to Mr. Beard, might explain why the cracks in the bricks had different cracking patterns. The vertical cracks suggested an aggravation of the normal settlement expectations.
The defendant introduced the testimony of two experts, Whitney Autin, a geologist, and Rodger Bayer, an expert in seismology. Mr. Autin testified that the soil in the area was of high clay content which is susceptible of shrinking and swelling, and that the soil condition could have been the cause of some of the damage to the property of the plaintiffs. He declared that this type of soil condition could cause vertical shear cracks in structures. Mr. Bayer was firm: the demolition exercises conducted at Camp Beauregard could not possibly have caused the damages alleged by the plaintiffs. In March of 1980 Mr. Bayer conducted tests to attempt to duplicate the earlier blasts which allegedly caused the damage to plaintiffs' homes. He interpreted the results of the tests to reveal that the explosions were totally incapable of causing damage to structures. It was his opinion that the amount of explosives necessary to cause damage to the brick, concrete and mortar structures of the plaintiffs' dwellings would be thousands of pounds.
The evidence shows that in the summer of 1976 three detonations occurred at four second intervals consisting of a total of 2,000 pounds of explosives. Thereafter, from October 1976 to 1977, the largest single detonation was of 164 pounds of explosives.
The trial court determined that the preponderance of the evidence supported the plaintiffs' claims that the demolition exercises caused the damage to their property and awarded the amount of damages based on the estimates submitted by plaintiffs' expert appraisers.
We will now discuss the two issues on appeal.
CAUSATION
This is a case of absolute liability based on the conduct of an ultrahazardous activity. Damage caused by blasting with *647 explosives imposes absolute liability and all the injured party need prove is damage and causation. Kent v. Gulf States Utilities Co., 418 So.2d 493 (La.1982); Fontenot v. Magnolia Petroleum Co., 227 La. 866, 80 So.2d 845 (1955).
The trial judge's factual determination of whether defendant's activities caused the alleged damages is entitled to great weight and should not be disturbed on appeal unless clearly wrong. Schexneider v. United Geophysical Corp., 385 So.2d 533 (La.App. 3rd Cir.1980).
The appellant argues that the trial court erred in finding that the damage to the homes of plaintiffs was caused by the demolition exercises because there was unrebutted expert testimony presented by the defendant that these explosives could not have caused the damage. We disagree.
In Roshong v. Travelers Insurance Company, 281 So.2d 785 (La.App. 3rd Cir. 1973) this court was confronted with a similar situation. In that case the defendant conducted seismic operations which allegedly caused damage to plaintiff's home. According to plaintiff and his witnesses the explosion startled everyone in the area. Several witnesses testified that they felt the explosion and that it caused their houses to vibrate. Within two days after the blasts plaintiff and other witnesses testified that certain damages to the plaintiff's house began to show up which did not exist before. The damage alleged by the plaintiff consisted of breaking of a window, breaking of bricks in a wall, "popping" of paneling, and breaks in a cracked slab, and a fireplace and chimney. The experts for the defendants testified the broken slab, fireplace and chimney could not have been caused by the explosions. Based on the experts' opinions the trial court awarded damages relating only to the broken window, "popped" paneling, and broken bricks, and denied plaintiff's claim for damages for the broken slab, cracked fireplace and cracked chimney. The plaintiff appealed. On appeal this court stated:
"We find manifest error in the determination that the damage to the slab, fireplace and chimney is not related to the damage which defendants' experts admit was caused by the blast or blasts. The evidence convinces us that the stress which broke bricks and "popped" the prefinished plywood interior wall board off studs (damages which defendants originally denied but have now, in effect, admitted) is related to the break in the slab, the fireplace and the leaning chimney. To award damages for the one and not the other is to disregard an established relationship between these damages. In addition, we find that the expert testimony of the two witnesses (who stated that the injury sustained under the circumstances could not possibly have been caused by the seismic explosions) legally insufficient to rebut the prima facie case established by Roshong. Five witnesses testified that damage to the structure was nonexistent at the time of the blasts and became apparent within two days of the explosions. The evidence supports a conclusion that all damage found by the experts is related to the seismic explorations, and that these explorations were a cause in fact of all the damage."
We are similarly convinced in the present case that the trial judge did not err. The testimony presented by the plaintiffs is convincing that the explosions created severe vibrations to their homes. Especially convincing is the testimony of the plaintiffs who were present in their homes at the time the explosions occurred and immediately witnessed damage in the form of cracked tiles, cracked paneling and sheetrock, cracked windows, broken mortar and a cracked porch. The plaintiffs also testified that the damage to their homes was nonexistent at the time of the blasts and became apparent soon thereafter. Under these circumstances we find that the trial court was not clearly wrong in concluding that the explosions were a cause in fact of the damages alleged by the plaintiffs. We find no manifest error in the trial court's determination that the explosions also caused damage in some instances *648 to the plaintiffs' carports, chimneys, fireplaces and concrete slabs.
DAMAGES
The appellant's attack on the awards consists of two general complaints. First, it complains that the trial court awarded damages for a number of individual items which the plaintiffs failed to prove were caused by the exercises. Second, it argues that the awards to three plaintiffs were in excess of what it cost to repair their damaged property.
Answering the first contention we need not discuss the particular items of damage because the same answer applies to all of them. Where property has been damaged through the fault of another the primary objective is to restore the owner of the damaged property, as nearly as feasible, to his status immediately prior to the damaging incident. Consequently, where the thing damaged can be adequately repaired, the proper measure of damages is the cost of restoration. Coleman v. Victor, 326 So.2d 344 (La.1976); Schexneider v. United Geophysical Corp., 385 So.2d 533 (La.App. 3rd Cir.1980). In the instant case the trial court awarded the plaintiffs the cost of repairing the damaged items based on expert appraisals including the cost of repair of cracked carports, chimneys and fireplaces. We have already determined that the trial court did not err in finding that such damage was caused by the explosions, therefore we find the trial court properly awarded damages for such items based on the cost of repairing such items.
As to the second argument regarding damages, the trial court, after making awards to three plaintiffs for the cost of restoration of their property, added an amount for "loss in value" to their property. The expert appraisers testified that the property of these three plaintiffs after repair was diminished in value despite the repairs.
Although the general standard is the cost of restoring the property to substantially the same condition as existed prior to the damaging incident, an adjustment to this measure of damage may be warranted where the restored property has a substantially lesser or greater value than it had before the accident. Ayala v. Bailey Electric Company, Inc., 318 So.2d 645 (La. App. 4th Cir.1975), writs issued 322 So.2d 770 (La.1975) and dismissed on joint stipulation December 10, 1975.
In the present case the fact that only three of the 26 plaintiffs were awarded damages of diminished value indicates that in those three cases the damages were such that they could not be repaired sufficiently well to restore the property completely to its pre-damaged condition. We find no abuse of discretion in the trial court's award of such damages based on the expert appraisals.
ANSWER TO APPEAL
The appellees have answered this appeal seeking to fix the expert witness fee of J.T. Sepulvado, the expert remodeling appraiser. The trial court evidently inadvertently omitted his fee from the judgment. It is clear from the record that Mr. Sepulvado was entitled to an expert witness fee. See LSA-R.S. 13:3666 and D'Angelo v. New Orleans Public Serv., Inc., 405 So.2d 1262 (La.App. 4th Cir.1981) writ denied 407 So.2d 748 (La.1981). Mr. Sepulvado made appraisals on behalf of the different claimants whose property was damaged by the blasts. However, the initial appraisals were made while he was in the employ of Mr. Behr, another appraiser who testified at trial. Mr. Sepulvado charged Mr. Behr for these appraisals. He was later hired by plaintiffs' counsel to conduct further evaluations as to 10 of the cases. His appraisal of the damages was increased as a result of these additional studies. However, the trial court did not base its award on Mr. Sepulvado's subsequent appraisals, but on the initial ones for which the record indicates he has already been paid. This witness, however, testified at trial and is entitled to an expert witness fee comparable *649 to that awarded the other experts. We fix his fee at $200.
For the above reasons the judgment is amended to award Mr. Sepulvado an expert witness fee in the amount of $200; in all other respects the judgment of the trial court is affirmed at appellant's total cost in the trial court and this court of $7,520.58.
AMENDED AND AFFIRMED.