KING, Judge.
The issue presented by this appeal is whether or not the trial court correctly applied the burden of proof.
Joseph Thibodeaux (hereinafter plaintiff) filed suit for damages, penalties and attorney’s fees against his insurer, Audubon Insurance Company (hereinafter Audubon). The trial court rendered judgment in favor of plaintiff and against defendant for damages in the amount of $4,405.00, but did not render judgment for penalties and attorney’s fees. Defendant appeals from this judgment, alleging that the trial court erroneously shifted the burden of proof from plaintiff to the defendant. We reverse.
FACTS
Plaintiff was the insured under a homeowner’s policy issued by defendant. This policy was effective from April 25, 1985 to April 25, 1986, and insured for direct physical loss to the described dwelling, other appurtenant structures, and personal property caused by a peril covered by the policy, unless the loss was excluded. One of the perils covered was damage caused by explosion. However, the exclusion section of the policy specifically stated:
“We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any other sequence to the loss.
# # # ⅛ * ‡
2. Earth Movement, meaning earthquake including land shock waves or tremors before, during or after a volcanic eruption; landslide; mudflow; earth sinking, rising or shifting; unless direct loss by:
* * # * * *
b. explosion
ensues and then we will pay only for the ensuing loss.”
On January 6, 1986, an explosion occurred at Diesi’s Little Capitol Restaurant in Krotz Springs, Louisiana, approximately two miles from plaintiff’s residence. This explosion was, allegedly, of sufficient magnitude to occasion damage to plaintiff’s fireplace by causing it to crack and pull apart from the frame of the house. Plaintiff filed a claim with defendant insurer and on February 4, 1986, defendant’s agent, Fred H. Vanderbrook, inspected the fireplace. Vanderbrook sent a written report to defendant which detailed his observations of the claim. This report made the following conclusions:
*691 “1. Separation between this fireplace and house has occurred as a result of downward movement of the outside portion of the fireplace, due primarily to the difference in soil loading between the fireplace and house foundations.”
2. Where attached to the house slab the fireplace has settled less; thus, the back edge of the fireplace foundation has settled more than the front edge. This caused the V shape separation between the fireplace and the house.
3. This separation has occurred over a relatively long period of time, and much of this settlement obviously took place prior to the most recent painting of the exterior of the house.
4. The differential settlement of the fireplace from the house has caused the cracks in the fireplace itself.
5. Quite often, although damage to the house has occurred over a period of time, the owners [sic] attention is not drawn to this damage until they have some reason to make a close inspection, such as feeling vibrations or knowing there was an explosion in the area. This gives the appearance that the cracks have occurred over a relatively short period of time.
It is our opinion that the separation and cracking of this fireplace has occurred as a result of ground settlement over the years and was not related to the recent explosion.”
Another fact supporting Mr. Vander-brook’s report is one to which he testified at his deposition. He stated that he observed house paint on the bricks of the fireplace, between the fireplace and the wall of the house, at the edge of the fireplace where it should have abutted the house. Mrs. Thibodeaux testified that the last time the house was painted was in the summer of 1985 before the explosion. The only way house paint could reach the bricks of the fireplace, between the fireplace and the wall of the house, was if the fireplace was separated from the house before it was painted.
At trial, plaintiff attempted to prove by a preponderance of the evidence that the explosion and not ground settlement caused the cracks in his fireplace. Plaintiff’s wife, Gussie Thibodeaux, testified that she did not notice any damage to the fireplace until after the explosion. She also admitted that she did not have occasion to examine the chimney prior to the explosion. Plaintiff testified that he, like his wife, did not notice any cracks in the fireplace before the explosion. Plaintiff further testified that he used the fireplace shortly after the explosion, but did not notice any cracks in the mortar. Plaintiff admitted that his wife did not tell him of the cracks and separation of the fireplace from the house until two weeks after the explosion.
Three friends and neighbors of the plaintiff testified in this case. The first, Mrs. Fuqua, stated that she visited the Thibo-deaux residence once or twice a week and had never noticed anything wrong with the fireplace until Mrs. Thibodeaux showed her the damage. Mr. Ellis, plaintiff’s next door neighbor, testified that he, too, had not noticed the damage until Mr. Thibodeaux pointed it out to him. The last neighbor, Mr. Bihm, lives one mile north of plaintiff. He stated that he never noticed the damage before the explosion, but only looked at the fireplace after plaintiff informed him of the cracks and separation after the explosion.
The trial court accepted two of plaintiff’s witnesses as experts. The first, Mr. Lacy, was qualified as an expert by virtue of the fact that he had been pouring and finishing cement for thirty years and “must know something about it” after all of that time. Lacy stated that he went to the Thibodeaux residence but did not inspect the chimney and he admitted that he had not noticed any cracks in the slab. Lacy also admitted that he had not levelled the slab after he originally poured it, but had believed the slab to be level. Next, Mr. Wyble was qualified and accepted as an expert brick mason. He testified that he examined the slab and the cracks, but that he had not measured the slab to determine if it was level. He stated that the cracks appeared to be fresh, but that this was the first time *692 he had ever been asked to estimate the age of fireplace cracks.
Mr. Vanderbrook, defendant’s expert, was deposed on March 19, 1987. In its written reasons, the trial court stated that it was unimpressed with Mr. Vander-brook’s credentials merely because he had never testified in an explosion case. However, Mr. Vanderbrook did state that he had testified 35 or 40 times as an engineer specializing in structural failure and damage analysis and in regard to structural problems. Defendant presented two witnesses in addition to the written report and deposition of Mr. Vanderbrook. Mr. Catal-on was tendered and accepted as an expert brick mason. He stated that he could not and had not in the past given an opinion as to the causation of the plaintiffs’ damages. When asked to state his opinion on the causation, plaintiff objected, observing that Mr. Catalon, as an expert brick mason, was not an expert on structural engineering. Mr. Catalon also declined to comment on the condition of the slab as he was a brick layer and not a concrete finisher. The second witness, Mr. Folks, was defendant’s claims adjuster. He testified that he had relied upon Mr. Vanderbrook’s report in denying plaintiff’s claim.
The trial court rendered judgment in favor of plaintiff and against defendant for damages but not for penalties and attorney’s fees.
Defendant appeals from the trial court’s judgment and assigns two errors. The first assignment alleges that the trial court erroneously shifted the burden of proving causation of the damages from plaintiff to defendant. The second assignment alleges that the court failed to assess the logic, consistency, reasonableness and credibility of the opinion testimony of an expert defense witness, resulting in manifest error. We will discuss these two assignments of error together.
LAW
It is well settled that an appellate court should not disturb the factual finding of a trial court in the absence of manifest error. Manifest error, in its simplest terms, means “clearly wrong.” Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring Company, 283 So.2d 716 (La.1973). The trial judge’s factual determination of whether defendant’s activities caused the alleged damages is entitled to great weight and should not be disturbed on appeal unless clearly wrong. Schexneider v. United Geophysical Corp., 385 So.2d 533 (La.App. 3 Cir.1980). In the instant case, however, the trial court was clearly wrong in its factfinding.
The trial court began its analysis by stating that this case is reminiscent of Fontenot v. Magnolia Petroleum Co., 227 La. 866, 80 So.2d 845 (1955). Fontenot was a consolidated case of several actions arising from defendant’s geophysical explorations for oil and gas within the vicinity of the homes of various plaintiffs. There, the defendant had exploded ten pound charges of Nitramon “S” at surface depths of 66 feet to 70 feet and at a distance of 860 feet to 1,000 feet from plaintiffs’ residences. The damages ranged from cracks in the walls to actual physical displacement of substantial masses of concrete in the foundations, floors and porches. The plaintiffs all testified positively that the defects complained of were nonexistent prior to the explosions. Plaintiff’s experts all testified positively that the defects complained of could not have been caused by natural settlement but were the result of sharp and otherwise rapid vibrations of the soil.
In the instant case, the explosion took place approximately two miles from plaintiff's residence. The trial court commented that the instant explosion was of a far greater magnitude than the one in Fontenot, but there are no facts which would support that conclusion. The testimony of plaintiff and his witnesses concerning when the damage occurred was extremely uncertain, as opposed to the clear and positive testimony presented in the Fontenot case. Also, the plaintiff’s experts in this case never did establish that the explosion caused the complained of damages; they merely opined that ground settlement did not cause the cracks. This is unlike the expert testimony in the Fontenot case, *693 which clearly established that the explosions caused the damages.
The case of Price v. State, 451 So.2d 644 (La.App. 3 Cir.1984) dealt with damage to property allegedly caused by military demolition exercises conducted by the State. There was extensive testimony from plaintiffs who were present in their homes when the explosions occurred and actually watched the damages arise. The appellate court noted in Price, supra, at pages 647-648:
“The testimony presented by the plaintiff is convincing that the explosions created severe vibrations to their homes. Especially convincing is the testimony of the plaintiffs who were present in their homes at the time the explosions occurred and immediately witnessed damage in the form of cracked tiles, cracked paneling and sheetrock, cracked windows, broken mortar and a cracked porch. The plaintiffs also testified that the damage to their homes was nonexistent at the time of the blasts and became apparent soon thereafter. Under these circumstances we find that the trial court was not clearly wrong in concluding that the explosions were a cause in fact of the damages alleged by the plaintiffs. We find no manifest error in the trial court’s determination that the explosions also caused damage in some instances to the plaintiffs’ carports, chimneys, fireplaces and concrete slabs.”
The trial court in this case completely discounted the expert testimony of defendant’s expert, Mr. Yanderbrook, stating that “the Court is not particularly impressed with his qualifications.” The reason given by the trial court was that Mr. Vanderbrook had never been qualified as an expert in a case where an explosion allegedly damaged property two or three miles away. It is important to note that plaintiff’s witnesses had also never been qualified as experts in a case where an explosion allegedly damaged property two or three miles away. Although plaintiff’s witnesses possessed qualifications in the fields of cement finishing and brick masonry, neither witness had the expertise in mechanical and structural engineering possessed by Mr. Yanderbrook.
The defendant alleges that the trial court erroneously shifted the burden of proving causation from plaintiff to defendant. The trial court made these statements in its written reasons for judgment:
“The Court finds as a fact that the damages was [sic] caused by the explosions, and not by settlement
[[Image here]]
The defendant argued in brief that plaintiff’s witnesses did not testify the explosion caused the damages. That may be true, but they did testify that the damage was not caused by settlement, and defendant showed no other intervening cause; and plaintiff says these [sic] were none.” (Emphasis added.)
Considering the evidence as a whole, this court is unable to agree with the trial court’s first statement. Plaintiff’s evidence was weak and inconclusive and did not prove plaintiff’s contentions that the damages were caused by explosion. The second statement is closer to the truth; plaintiff did not testify nor otherwise prove that the explosion caused the damages. The homeowner’s policy issued to plaintiff specifically provided that the insurer did not insure for damages caused by earth movement or shifting of the earth unless due to explosion. Even if the trial court believed plaintiffs’ evidence that the damage was not caused by ground settlement, that does not prove that the damages were caused by explosion. We find that the trial court erroneously shifted the burden of proof to the defendant by finding that defendant failed to show other intervening causes of the damages. That was not defendant’s burden of proof. Finding that the trial court was clearly wrong in its application of the burden of proof we reverse its decision.
For these reasons, the judgment of the trial court in favor of plaintiff and against defendant is reversed and set aside. Judgment is rendered in favor of defendant and against plaintiff denying his claim for damages and dismissing his suit. All costs of *694 the trial and appellate court are taxed to plaintiff-appellee.
REVERSED.